GLANCY PRONGAY & MURRAY LLP
Jonathan M. Rotter (#234137)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Phone: (310) 201-9150
jrotter@glancylaw.com

CLARKSON LAW FIRM
Glenn A. Danas (#270317)
Katelyn M. Leeviraphan (#348549)
22525 Pacific Coast Highway
Malibu, CA 90265
Phone: (213) 788-4050
gdanas@clarksonlawfirm.com
kleeviraphan@clarksonlawfirm.com

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
David M. Given (#142375)
Nicholas A. Carlin (#112532)
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA 94129
Phone: (415) 398-0900
dmg@phillaw.com
nac@phillaw.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> AYLO HOLDINGS S.A.R.L., a foreign entity; AYLO FREESITES, LTD., a foreign entity d/b/a/ "PORNHUB"; AYLO USA INC., a Delaware corporation; AYLO GLOBAL ENTERTAINMENT INC., a Delaware corporation; 9219-1568 QUEBEC, INC., a foreign entity; Toqon, LLC, a Delaware limited liability company; AYLO BILLING LTD., a foreign entity; AYLO BILLING US CORP., a Delaware corporation; AYLO CY HOLDINGS LTD., a foreign entity <br><br> Defendant. | Case No. <br><br> **CLASS ACTION COMPLAINT** |

Plaintiff Jane Doe ("Plaintiff"),[1] individually and on behalf of all others similarly situated, files this complaint against Aylo Holdings S.A.R.L. f/k/a MindGeek S.a.r.l., a foreign entity ("Aylo Holdings"); Aylo Freesites, Ltd. f/k/a MG Freesites, Ltd., a foreign entity, d/b/a "Pornhub" ("Aylo Freesites"); Aylo Usa Inc., a Delaware corporation ("Aylo USA"); Aylo Global Entertainment Inc., a Delaware corporation ("Aylo Global"); 9219-1568 Quebec, Inc., a foreign entity ("9219-1568 Quebec Inc."); Toqon, LLC, a Delaware limited liability company d/b/a/ "TrafficJunky" ("TrafficJunky"); Aylo Billing Ltd. f/k/a MG Billing Ltd. d/b/a Probiller, a foreign entity ("Aylo Billing"); Aylo Billing Us Corp. f/k/a MG Billing US Corp., a Delaware corporation ("Aylo Billing US"); Aylo Cy Holdings Ltd., a foreign entity ("Alyo CY" and together with Alyo Holdings, Alyo Freesites, Aylo USA, Alyo Global, 9219-1568 Quebec Inc. Toqon, Aylo Billing, Aylo US Billing, referred to herein collectively and interchangeably as "Defendants" or "Aylo"). Plaintiff alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge.

## I. NATURE OF THE ACTION

1. Aylo operates the pornographic website called "Pornhub," www.pornhub.com. By any metric, Pornhub is one of the most popular sites on the internet. According to public reporting, it regularly attracts over 170 million daily users and is often ranked among the 10 most viewed websites in the world; more Americans use it than use Twitter, Netflix, or Instagram.

2. Defendants consist of a group of interrelated companies. Their formal ownership has shifted during the relevant period, but throughout, they have acted as

---

[1] Plaintiff seeks to proceed under a pseudonym, which courts have found appropriate in cases concerning "the area of human sexuality" because "social stigmatization [is] among the most compelling reasons for anonymity." *Jane Roes 1-2 v. SFBSC Mgmt., LLC*, 77 F. Supp. 3d 990, 994 (N.D. Cal. 2015).

a common enterprise with regard to the ownership and operation of Pornhub, and specifically, with regard to the misconduct alleged below.

3. Pornhub operates much as any internet platform serving video content to consumers but caters specifically to display pornographic videos. Similar to other such internet platforms like YouTube, Pornhub's business model relies on targeted advertising and digital marketing services.

4. To maximize the revenue derived from these services, which together with other revenue sources reportedly has reached $460 million a year,[2] Pornhub extracts a vast amount of data about its users. Pornhub profiles its users by gender, age, location, personal device, and browser and operating system information, for example. It collects biometric data from certain users for certain supposed "security" purposes. It also tracks users' video viewing information.

5. The subject of this case is under what circumstances Pornhub shares that information with others. The transfer or other dissemination to others of the video viewing information of Pornhub's users constitutes a violation of federal law.

6. In short, Pornhub chose to prioritize its profit over the privacy of its users and the integrity of their personal data. That decision was not only ethically wrong, but it was also illegal.

**II.   THE PARTIES**

7. Plaintiff is an individual residing in the State of California. She has consistently viewed videos through her premium account on Pornhub since 2019, where her personal user data, including the identity of videos she viewed, was unknowingly disclosed to a third party, Google. She did not consent to the disclosure of her personally identifiable information. In making her decision to engage with Aylo's websites, Plaintiff reasonably expected that Aylo would safeguard her

---

[2] https://www.morningbrew.com/daily/stories/2-execs-from-pornhubs-parent-company-mindgeek-resign (June 22, 2022).

personally identifiable information. As a result of Aylo's disclosure of such information, Plaintiff has suffered harm and seeks damages and an injunction enjoining Aylo from continuing to violate private regulations.

8. Defendant Aylo Holdings is organized under the laws of Luxembourg and owns and operates over one hundred (100) adult entertainment websites, production companies, and brands. Holdings owns and/or controls the majority of pornography available on the Internet, including among others, the following websites: PornHub.com, YouPorn.com, RedTube.com, Xtube.com, and Tube8.com.

9. Defendant Aylo Freesites is organized under the laws of Cyprus with its principal place of business at 195-197 Old Nicosia-Limassol Road, Block 1 Dali Industrial Zone, Cyprus 2540. Aylo Freesites is a wholly owned subsidiary of Aylo Holdings that owns, operates, and/or manages pornographic websites owned by Aylo Holdings, including Pornhub, and other sites, such as TrafficJunky.com, which provides web advertising and digital marketing services in connection with the subject pornographic website(s).

10. Defendant Aylo USA is incorporated under the laws of the State of Delaware with a principal place of business at 21800 Oxnard Street, Suite 150, Woodland Hills, California 91367. Upon information and belief, Aylo USA is a subsidiary of Defendant Aylo Global, a subsidiary of Aylo Holdings. Aylo USA supports the operations of Pornhub and other Aylo tube sites through support services such as content moderation, industry outreach and influencing, including media relations.

11. Defendant Aylo Global is incorporated under the laws of the State of Delaware with a principal place of business at 21800 Oxnard Street, Suite 150, Woodland Hills, California 91367. Upon information and belief, Entertainment is used to support the operations of Pornhub and other Aylo tube sites, through support services such as content moderation, industry outreach and influencing, including media relations.

12. Defendant 9219-1568 Quebec Inc. is incorporated under the laws of Canada with principal place of business at 7777 Décarie Blvd., Montreal, Quebec H4P 2H2. Upon information and belief, Quebec Inc. conducts business as "MindGeek" throughout the United States, including within the State of California, and employees over 1,000 people. Quebec Inc. provides services to Pornhub through Freesites.

13. Defendant TrafficJunky is organized under the laws of the State of Delaware, having a principal place of business located at 21800 Oxnard Street, Suite 150, Woodland Hills, California 91367. TrafficJunky is a web advertising and digital marketing company operated by Freesites. Upon information and belief, TrafficJunky sells ads on Pornhub.

14. Defendant Aylo Billing is incorporated under the laws of Ireland, having a principal place of business located at The Black Church, St Mary's Place, Dublin 7, Dublin. Aylo Billing is a subsidiary of Aylo Holdings and functions as Aylo's in-house payment platform that allows users to buy content and memberships from Aylo-owned brands including Pornhub. Upon information and belief, Aylo Billing collects subscriptions from premium users and resells membership subscriptions for certain websites operated by companies under Aylo Holdings' common control.

15. Defendant US Billing is incorporated under the laws of the State of Delaware with a principal place of business at 610 Brazos Street, Suite 500, Austin, Texas 78701, USA 21800. Upon information and belief, Aylo US Billing is a subsidiary of Billing, and operates as the payment processing platform for Pornhub.

16. Defendant Aylo CY is incorporated under the laws of Cyprus with a principal place of business at 195-197 Old Nicosia-Limassol Road, Block 1 Dali Industrial Zone, Cyprus 2540. Aylo CY is the Cyprus VAT Group representative for

Freesites and is responsible for preparing and submitting VAT returns and paying/reclaiming any VAT on behalf of Aylo Freesites.[3]

## III. JURISDICTION AND VENUE

### A. Subject Matter Jurisdiction

17. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that this complaint states a federal question: violations of 18 U.S.C. § 2710.

### B. Personal Jurisdiction: Defendants' Network of Interrelated Corporate Entities

18. The Court may properly exercise personal jurisdiction over Defendants, which maintain minimum contacts with this District such that maintenance of this lawsuit does not offend traditional notions of fair play and substantial justice, pursuant to Fed. R. Civ. Proc. 4(k)(2). Defendants rely on the United States and California markets to promote and advertise for their tube sites, and specifically target United States and California consumers through their tube sites. Based on the facts alleged above and below, the Defendants are engaged in and operating a single, common enterprise with each other using a series of interrelated corporate entities, some of which are located in the United States and/or California, and all of which use Pornhub as a channel to directly target United States and California consumers. Throughout this period, the Defendants effectively owned, operated, and supported Pornhub, and have actively appealed to and profited from audiences in this District.

19. Aylo Holdings collaborated with the other Defendants to create a common enterprise that developed, operated, and maintained Pornhub within the United States and California; marketed Pornhub to the United States and California; unlawfully transferred and/or disseminated to others video viewing information of Pornhub's users; and generated advertising revenues from subscriptions on Pornhub.

---

[3] MANAGING INDIRECT TAX REFUNDS - VAT/GST GROUPING, https://cdn.ey.com/echannel/gl/en/services/tax/indirect-tax/pdfs/Ey-grouping.pdf (last visited Mar 8, 2024).

But for each Defendants' role in this common enterprise, the United States and California users would not have used Pornhub and had their video viewing and personal user information unlawfully disclosed to third parties.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in this District, and because Defendants are subject to personal jurisdiction here.

## IV. PORNHUB'S BUSINESS MODEL

21. Aylo operates many popular pornographic websites, including Pornhub, its flagship video sharing platform. The website's basic service, which makes millions of pornographic videos in its library available to users, is ad-supported.[4] In 2019, the Pornhub website had about 42 billion visits, an average of 115 million visits per day, making it the eighth most visited website in the U.S.[5] In 2023, the United States was the top country directing traffic to Pornhub.[6]

### A. Pornhub Employs Massive User Data Extraction Strategies

22. As an ad-supported website, Pornhub depends upon the efficacy of its online advertising to identify and reach users with an interest in what's being advertised to them. That efficacy drives the value proposition of Pornhub's online advertising platform and commands a premium price in the marketplace in relation to other, more diffuse, advertising methods.

---

[4] Feras Antoon & David Tassillo, *ETHI—Invitation to Appear*, Mindgeek (Feb. 5, 2021), https://www.ourcommons.ca/Content/Committee/432/ETHI/Brief/BR11079307/br-external/MindGeek-e.pdf.

[5] *The 2019 Year in Review*, Pornhub Insights, https://www.pornhub.com/insights/2019-year-in-review.

[6] *2023 Year in Review*, Pornhub Insights, https://www.pornhub.com/insights/2023-year-in-review#traffic.

23. To accomplish that, Pornhub extracts vast amounts of data from and about its users. This information might include browser and operating system information, devices used to access the Pornhub website, time zone settings, and online identifiers like internet protocol addresses. Pornhub then uses that information to glean demographics of its users for what's called "targeted advertising," traditionally by age and gender.[7]

24. Pornhub also extracts other user data, including what videos users view on the website and their sexual predilections, the latter via the use of so-called video "tags." This data is sent to servers where it is indexed and profiled for potential advertisers. This practice allows Pornhub to offer "advanced targeting" of users to those advertisers, allowing them to target campaigns to users based on keywords, search terms, and contextual targets, including the identity and frequency of video tags associated with users' viewing habits. Thus, Pornhub harvests and monetizes vast amounts of user data that it shares with advertisers and other companies.

25. This user data is personally identifiable. Specifically, when a user signs into their Google account during a browsing session, they are assigned a semi-persistent user ID that is used to track the user's browsing activity. Thus, when a user is signed into Google and visits Pornhub, and Pornhub transmits the video title information to Google, Google associates the user with the user's video viewing history. That user ID is linked with the Google account, allowing Google to identify that user by name.

26. By including a user's "persistent user ID" in its data transmission to Google, data that can be used to recognize the geolocation of a user as well as his device information, Google matches specific users to their video viewing history, including particular videos viewed by that user as well as the video "tags" associated therewith. This ability to match specific users to their video viewing history is further

---

[7] *See* https://www.trafficjunky.com/advertiser/targeting-features

enhanced by Pornhub's embedding Google analytics in its websites and services, which enables the sharing with Google of additional user information.

### B. **Pornhub Does Not Properly Obtain Users Consent To Disclose Their Video History To Google**

27. Pornhub's privacy policy states that its websites collect different data based on the type of user:[8]

> The Data We Collect About You
>
> We may collect different kinds of personal data about you, depending on whether you chose to create an account with us.
>
> Persons who visit the Websites without logging in or registering ("**unregistered users**"):
>
> - **Contact Information**: We collect email address or any other information which you voluntarily provide to us at your direction for a specific function, for example a contest or survey.
>
> - **Website activity data**: We collect information about how you use our Websites, products and services and interact with our content and advertisements, including the pages you visit in our Websites, search history, and the referring web page from which you arrived at our Websites. We collect browser and operating system information, devices you use to access the Websites and your time zone setting. We also collect online identifiers. Specifically, we collect internet protocol (IP) address information and we set cookies as explained below in the section on Cookies and Automatic Data Collection Technologies
>
> Persons who choose to create an account on Pornhub, including persons who sign up in the Model Partner Program ("**registered users**") and persons who choose to upgrade their account on Pornhub to a premium account such that they have access to the content found on Pornhub Premium ("**Premium users**"):
>
> - We collect from registered users the same categories of information described above for unregistered users.
>
> - **Contact Information**: We collect username or similar identifier, and email address.
>
> - **Payment and Commercial Information**: If you make a purchase, or receive payments from us (such as through our Model Partner Program), we collect payment card or account details and related information necessary to process payments. We also

---

[8] *Privacy Policy*, Pornhub (Aug. 17, 2023), https://www.pornhub.com/information/privacy.

- collect details about payments to and from you and details of products and services you have purchased or received from us.

- **User Submitted Personal Information**: We collect information you submit in order to personalize your account or for a specific function, for example date of birth, age, gender, your interests, preferences, feedback, survey responses, your preferences in receiving marketing from us and our third parties, and your communication preferences, as well as any other information which you voluntarily provide to us at your direction for a specific function.

- **Identifiers and Biometric Information**: If you choose to register to certain services on the Websites (such as our Model Partner Program), we collect identifiers you submit to us (including government-issued photo identification as well as other documentation) in order for us to verify your identity. We also collect biometric information in order to verify the authenticity of the identifiers you provide to us while registering for such services as further explained in the section "Biometric Information" below.

- **User Contributions including Audio/Video Information**: We provide areas on our Websites where you can post information about yourself and others, communicate with others, upload content (e.g., pictures, video files, etc.), and post comments or reviews of content found on the Websites.

28. Pornhub also wrongly suggests that such data is anonymized prior to sharing with third parties like Google:

> **Use of Google Analytics.** We use Google as a service provider to collect and analyze information about how users use the Websites, including by collecting website activity data through first-party cookies set by our domains, and third-party cookies set by Google. ***Because we activated IP anonymization for Google Analytics, Google will anonymize the last octet of a particular IP address*** and will not store your full IP address. Google will use the information only for the purpose of providing Google Analytics services to us, and will not use this information for other purposes.

(Emphasis in bold and italics added.)

29. However, even if Pornhub anonymizes the last eight numbers of the IP address, Pornhub transmits other data which is sufficient to allow Google to identify specific users and their video viewing history.

30. But even if anonymizing the last octet of the IP address was sufficient, the Privacy Policy is insufficient to obtain user's consent to the disclosure of personally identifiable information. The Video Privacy Protection Act ("VPPA")

CLASS ACTION COMPLAINT
9

requires that Pornhub must obtain the informed, written consent of the user "in a form that is distinct and separate from any form setting forth other legal or financial obligations of the consumer." 18 U.S.C. § 2710(b)(2)(B)(i). As discussed, Pornhub discloses that it shares data with Google in the same document that seeks to obtain user consent to other data collection.

## V.     WAIVER OF ARBITRATION

31.     Pornhub's Terms of Service include an arbitration clause, which provides (in part) that all disputes must be addressed in arbitration.

32.     Per the arbitration clause, Plaintiff filed an arbitration demand with the American Arbitration Association ("AAA") (Case No. 01-23-0003-3205) on July 26, 2023.

33.     Plaintiff's arbitration demand included all the claims that arose out of Aylo's unlawful actions under the Video Privacy Protection Act, 18 U.S.C. § 2710.

34.     Plaintiff paid the $225.00 filing fee that was required of her and complied with all other requirements of the arbitration provision and the AAA's *Consumer Arbitration Rules*.

35.     On September 6, 2023, the AAA initiated the arbitration and invoiced Freesites $375.00 for the Initial Administrative Fee that was required for the business to initiate arbitration, and $300.00 for the Expedited Consumer Clause Review Fee, totaling $675.00.

36.     On September 26, 2023, the AAA sent Aylo Freesites a letter and advised it that it had failed to make the required payment for the Initial Administrative Fee, and that the AAA would administratively close the case if payment were not received by the October 6, 2023 deadline.

37.     Aylo Freesites again failed to pay the required fees by AAA's deadline of October 6, 2023, which was 30 days after Plaintiff initiated the arbitration.

CLASS ACTION COMPLAINT
10

38. On October 11, 2023, the AAA sent the Parties a letter confirming that AAA had not received payment from Aylo Freesites for the Initial Administrative Fee and informing them that the case had been administratively closed as a result.

39. Aylo has caused substantial delay in the matter due to Aylo Freesites' filing to arbitrate in accordance with the American Arbitration Association's Rules, which are incorporated by reference into its Terms of Service for Pornhub.

40. Cal. Code Civ. Proc. §§ 1281.97 and 1281.98 dictate that "if the fees or costs to initiate an arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration."

41. Freesites was advised in writing that Cal. Code Civ. Proc. § 1281.97 applied to this action, that the matter would be closed if payment was not received by October 6, 2023, and that the AAA could not grant any extensions to this payment deadline.

42. Cal. Code Civ. Proc. § 1281.97(b)(1) provides that where the drafting party materially breaches § 1281.97 by failure to timely pay arbitration filing fees, the consumer may "[w]ithdraw the claim from arbitration and proceed in a court of appropriate jurisdiction."

43. Accordingly, Aylo has waived its right to arbitrate in accordance with its Terms of Service for Pornhub by failing to timely pay the arbitration initiation fees as required by Cal. Code. Civ. Proc. § 1281.97.

44. Plaintiff has thus unilaterally elected to proceed in this court pursuant to Cal. Code Civ. Proc. § 1281.97(b)(1).

## VI.   DELAYED DISCOVERY AND TOLLING

45. Each unauthorized transmission of video viewing history by Defendants is a separate wrong which triggers anew the relevant statute of limitation.

46. Further, all applicable statutes of limitation have been tolled by operation of the delayed discovery doctrine, which delays accrual until Plaintiff has, or should

have, inquiry notice of the cause of action. Plaintiffs and Class and Subclass members were not on inquiry notice despite acting with reasonable diligence. The nature of what Defendants send to Google is not readily available to ordinary consumers and requires technically sophisticated analysis to ascertain.

## VII. CLASS ALLEGATIONS

47. Plaintiff seeks class certification of the class set forth herein pursuant to Federal Rule of Civil Procedure 23. Specifically, Plaintiff seeks class certification of all claims for relief herein on behalf of a class defined as follows:

> All persons in the U.S. who have or had a premium Pornhub account and accessed videos on Pornhub and had a Google account.

48. Excluded from the class are: (i) any judge or magistrate judge presiding over this action and members of their staff, as well as members of their families; (ii) Defendants, Defendants' predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which any Defendant's or its parent(s) has a controlling interest, as well as Defendants' current or former employees, agents, officers, and directors; (iii) persons who properly execute and file a timely request for exclusion from the class; (iv) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (v) counsel for Plaintiff and Defendants; and (vi) the legal representatives, successors, and assigns of any such excluded persons.

49. Plaintiff is the proposed class representative for the Class.

50. Plaintiff reserves the right to modify or refine the Class definition based upon discovery of new information and to accommodate any of the Court's manageability concerns.

51. **Numerosity (Rule 23(a)(1))**. The class is so numerous that joinder of individual members herein is impracticable. The exact number of class members, as herein identified and described, is not known, but is more likely than not several million.

52. **Commonality (Rule 23(a)(2))**. Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual class members, including the following:

(a) whether Defendants disclosed class members' video viewing histories to third parties, including Google;

(b) whether Aylo obtained the consent of class members to disclose their video viewing history to third parties in accordance with the VPPA;

(c) whether class members were harmed by Defendants' wrongful conduct.

53. **Typicality (Rule 23(a)(3))**. Plaintiff's claims are typical of the claims of members of the Class because, among other things, she and members of the Class sustained similar injuries as a result of Defendants' uniform wrongful conduct and their legal claims all arise from the same events and wrongful conduct by Defendant.

54. **Adequacy (Rule 23(a)(4))**. Plaintiff will fairly and adequately protect the interests of the Class. Her interests do not conflict with the interests of the Class members, and Plaintiff has retained counsel experienced in complex class action and data privacy litigation to prosecute this case on behalf of the Class.

55. **Predominance & Superiority (Rule 23(b)(3))**. In addition to satisfying the prerequisites of Rule 23(a), Plaintiff satisfies the requirements for maintaining a class action under Rule 23(b)(3). Common questions of law and fact predominate over any questions affecting only individual class members, and a class action is superior to individual litigation and all other available methods for the fair and efficient adjudication of this controversy. The amount of damages available to Plaintiff is insufficient to make litigation addressing Defendants' conduct economically feasible in the absence of the class action procedure. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense presented by the complex legal and factual issues of the case to all parties and the court system. By contrast, the class action device presents far fewer

management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

56. **Final Declaratory or Injunctive Relief (Rule 23(b)(2))**. Plaintiff also satisfies the requirements for maintaining a class action under Rule 23(b)(2). Defendant has acted or refused to act on grounds that apply generally to the Class, making final declaratory and/or injunctive relief appropriate with respect to the Class as a whole.

## CAUSE OF ACTION

### First Cause of Action

**(Violation of the Video Privacy Protection Act, 18 U.S.C. § 2710)**

57. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

58. Defendant is a "video tape service provider" because it disseminates countless videos on its websites and thus "engag[es] in the business, in or affecting interstate or foreign commerce, of rental sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

59. Plaintiff and the members of the Class are "consumers" because they are registered users of Defendants' websites. 18 U.S.C. § 2710(a)(1).

60. Defendant disclosed to a third party, Google, Plaintiff's and the Class's "personally identifiable information," ("PII") which "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."  18 U.S.C. § 2710(a)(3).

61. Plaintiff and the Class members viewed videos using Defendants' websites.

62. Defendants disclosed Plaintiff's and the Class's PII knowingly because it enabled it to engage in targeted advertising.

63. Defendants did not seek consent from Plaintiff or the Class to share their personally identifiable information "in a form distinct from any form setting forth

other legal or financial obligations of the consumer" either "at the time the disclosure is sought" or "given in advance for a set period of time, not to exceed 2 years or until consent is withdrawn by the consumer," nor "provided an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by case basis or to withdraw from ongoing disclosures, at the consumer's election." 18 U.S.C. § 2710(b)(2).

64. Plaintiff and the Class did not consent to disclose their video activity to third parties, nor were the disclosures made in the "ordinary course of business," as the VPPA defines that term. 18 U.S.C. § 2710(a)(2).

65. On behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of the Plaintiff and the Class by requiring Defendants to comply with VPPA's requirements for protecting a consumer's PII; and (3) statutory damages of $2,500 for each violation of the VPPA pursuant to 18 U.S.C. § 2710(c).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests relief against Defendants as set forth below:

(a) entry of an order certifying the proposed Class pursuant to Federal Rule of Civil Procedure 23;

(b) entry of an order appointing Plaintiff as representative of the Class;

(c) entry of an order appointing Plaintiff's counsel as co-lead counsel for the Class;

(d) entry of an order for injunctive and declaratory relief as described herein, including but not limited to:

(i) enjoining Defendants from transmitting any additional user data to any person or entity;

(ii) enjoining Defendants from taking and transmitting to anyone else the above-described user data;

       (iii) requiring Defendants to destroy the user data taken pursuant to the above practices, including that user data in the possession of third parties;

       (iv) requiring Defendants to provide confirmation that the above steps have been implemented;

       (v) requiring Defendants to provide each consumer whose information was unlawfully collected with notice of who that information was communicated to;

(e) entry of judgment in favor of each Class member for damages suffered as a result of the conduct alleged herein, statutory damages, punitive damages, restitution, and disgorgement, to include interest and prejudgment interest;

(f) award Plaintiff reasonable attorneys' fees and costs; and

(g) grant such other and further legal and equitable relief as the court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

| | |
|---|---|
| DATED: April 19, 2024 | By: /s/ *Jonathan M. Rotter*<br>GLANCY PRONGAY & MURRAY LLP<br>Jonathan M. Rotter<br>1925 Century Park East, Suite 2100<br>Los Angeles, CA 90067<br>Phone: (310) 201-9150<br>jrotter@glancylaw.com<br><br>CLARKSON LAW FIRM<br>Glenn A. Danas<br>Katelyn M. Leeviraphan<br>22525 Pacific Coast Highway<br>Malibu, CA 90265<br>Telephone: (213) 788-4050<br>gdanas@clarksonlawfirm.com<br>kleeviraphan@clarksonlawfirm.com<br><br>PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP<br>David M. Given<br>Nicholas A. Carlin<br>39 Mesa Street, Suite 201 – The Presidio<br>San Francisco, CA 94129<br>Phone: (415) 398-0900<br>dmg@phillaw.com<br>nac@phillaw.com<br><br>*Attorneys for Plaintiff Jane Doe* |

CLASS ACTION COMPLAINT
17