GLANCY PRONGAY & MURRAY LLP
Jonathan M. Rotter (#234137)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Phone: (310) 201-9150
jrotter@glancylaw.com

CLARKSON LAW FIRM
Glenn A. Danas (#270317)
Katelyn M. Leeviraphan (#348549)
22525 Pacific Coast Highway
Malibu, CA 90265
Phone: (213) 788-4050
gdanas@clarksonlawfirm.com
kleeviraphan@clarksonlawfirm.com

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
David M. Given (#142375)
Nicholas A. Carlin (#112532)
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA 94129
Phone: (415) 398-0900
dmg@phillaw.com
nac@phillaw.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JANE DOE, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

AYLO HOLDINGS S.A.R.L., a foreign entity; AYLO FREESITES, LTD., a foreign entity d/b/a/ "PORNHUB"; AYLO USA INC., a Delaware corporation; AYLO GLOBAL ENTERTAINMENT INC., a Delaware corporation; 9219-1568 QUEBEC, INC., a foreign entity; Toqon, LLC, a Delaware limited liability company; AYLO BILLING LTD., a foreign entity; AYLO BILLING US CORP., a Delaware corporation; AYLO CY HOLDINGS LTD., a foreign entity

Defendant.

Case No. 2:24-cv-03267-MCS-JPR

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. PROC. 12(b(2) AND 12(b)(6)**

**TABLE OF CONTENTS**


I. PRELIMINARY STATEMENT ..... 1

II. STATEMENT OF FACTS ..... 1

A. Aylo Improperly Discloses Users' Video History to Google. ..... 1

B. Plaintiff Files an Arbitration Demand, Which Aylo Ignores. ..... 2

III. ARGUMENT ..... 3

A. This Court Should Deny Aylo's Motion to Compel Arbitration. ..... 3

1. Aylo Waived Arbitration. ..... 3

(a) Aylo Received Notice from AAA and Failed to Comply with AAA's Fee Deadline. ..... 3

(b) § 1281.97 is Strictly Construed and Contains no Exceptions. ..... 4

(c) Aylo's 1281.97 Preemption Argument is a Nonstarter. ..... 5

2. This Court Has Jurisdiction to Determine Aylo's Waiver. ..... 8

(a) Aylo Waived Any Right to Enforce Its Delegation Clause. ..... 8

(b) The Agreement's Delegation Clause Does Not Clearly or Unmistakably Delegate the Arbitrability of this Dispute to Arbitration. ..... 9

B. The Complaint Adequately Alleges Violation of the VPPA ..... 10

1. The Complaint Adequately Alleges Disclosure of PII ..... 10

(a) Pornhub's Own Privacy Policy Shows that Pornhub Disclosed Copious PII to Google ..... 10

(b) Even if the Only Information Provided to Google by Pornhub was "Anonymized," it is Identifiable ..... 11

2. The Complaint Adequately Alleges that Plaintiff and Other Premium Pornhub Users Are "Consumers" ..... 13

C. The Court has Personal Jurisdiction Over All Defendants ..... 14

1. The Court Has Jurisdiction Over The Foreign Entities Under Rule 4(k)(2) And Under The Common Enterprise Doctrine ..... 15

(a) Aylo Holdings ..... 15

(b) Aylo Billing ........ 16

2. The Court Has Jurisdiction Over The Delaware Entities. ........ 17

(a) General Jurisdiction Exists. ........ 17

(b) The Delaware Entities Are Part of the Common Enterprise. ........ 18

D. Alternatively, Jurisdictional Discovery Is Appropriate. ........ 20

IV. CONCLUSION ........ 22

# TABLE OF AUTHORITIES

CASES

*Ade v. Viki, Inc.*,
2024 WL 1880153 (N.D. Cal. Mar. 28, 2024) .................................................... 18

*Agerkop v. Sisyphian LLC*,
2021 WL 1940456 (C.D. Cal. Apr. 13, 2021) ............................................. 11, 13

*Ahlstrom v. Dhi Mortg. Co., L.P.*,
2020 WL 13413226 (N.D. Cal. Jan. 16, 2020)................................................... 14

*Armstrong v. Michaels Stores, Inc.*,
2018 WL 6505997 (N.D. Cal. Dec. 11, 2018) ............................................. 15, 16

*Belyea v. GreenSky, Inc.*,
637 F. Supp. 3d 745 (N.D. Cal. 2022)................................................................ 13

*Bielski v. Coinbase, Inc.*,
2022 WL 1062049 (N.D. Cal. Apr. 8, 2022)................................................ 14, 15

*Calder v. Jones*,
465 U.S. 783 (1984)............................................................................................ 26

*Chan v. Society Expeditions, Inc.*,
39 F. 3d 1398 (9th Cir. 1994) ............................................................................. 27

*Cirana Corp. v. Changshu Jisheng Spinning*,
2016 WL 5890061 (C.D. Cal. Oct. 6, 2016) ....................................................... 20

*City and Cty. of S.F. v. Purdue Pharma L.P.*,
491 F. Supp. 3d 610 (N.D. Cal. 2020)................................................................ 21

*Costa v. Melikov*,
2022 WL 18228248 (C.D. Cal. Oct. 21, 2022) ................................................... 13

*Cvejic v. Skyview Capital, LLC*,
92 Cal. App. 5th 1073 (2023) .............................................................................. 10

*De Leon v. Juanita's Foods*,
85 Cal. App. 5th 740 (2022) .......... 12

*Delphix Corp. v. Embarcadero Techs., Inc.*,
749 F. App'x. 502 (9th Cir. 2018) .......... 24

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .......... 16, 17, 18, 19

*Eliasieh v. Legally Mine, LLC*,
2020 WL 1929244 (N.D. Cal. Apr. 21, 2020) .......... 12

*Ellis v. Cartoon Network, Inc.*,
803 F.3d 1251 (11th Cir. 2015) .......... 19

*Ellis v. Cartoon Network, Inc.*,
2014 WL 5023535 (N.D. Ga. 2014) .......... 18

*Espinoza v. Superior Ct.*,
83 Cal. App. 5th 761 (2022) .......... 10, 12

*Fleites v. Mindgeek S.A.R.L., et al.*,
2022 WL 4455558 (C.D. Cal. July 29, 2022) .......... 27

*Gallo v. Wood Ranch USA, Inc.*,
81 Cal. App. 5th 621 (2022) .......... 10, 12

*Geanacopulos v. Narconon Fresh Start*,
39 F. Supp. 3d 1127 (D. Nev. 2014) .......... 22

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
328 F.3d 1122 (9th Cir. 2003) .......... 20, 27

*Harris v. Pub. Broad. Serv.*,
662 F. Supp. 3d 1327 (N.D. Ga. 2023) .......... 20

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984) .......... 24

*Hengle v. Treppa*,
19 F.4th 324 (4th Cir. 2021) .......... 15

*Hernandez v. Sohnen Enters., Inc.*, 102 Cal. App. 5th 222 (2024) .......... 13

*Hohenshelt v. Superior Court*, 99 Cal. App. 5th 1319 (2024) .......... 12, 13

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002) .......... 15

*In re Hydroxycut Mktg. and Sales Practices Litig.*, 810 F. Supp. 2d 1100 (S.D. Cal. 2011) .......... 21, 24, 26, 27

*In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118 (S.D. Cal. 2018) .......... 25

*J.H. Rose Logistics LLC v. Bonerts Inc.*, 2017 WL 5634098 (C.D. Cal. Nov. 20, 2017) .......... 21

*Jackson v. Fandom, Inc.*, 2023 WL 4670285 (N.D. Cal. July 20, 2023) .......... 16

*Keeton v. Tesla, Inc.*, 103 Cal. App. 5th 26 (2024) .......... 12, 13

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007) .......... 18

*Kuzenski v. Uproxx LLC*, 2023 WL 8251590 (C.D. Cal. Nov. 27, 2023) .......... 19

*Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220 (Ct. App. 1991) .......... 25

*Laub v. U.S. Dep't of Interior*, 342 F.3d 1080 (9th Cir. 2003) .......... 27

*Lee v. Citigroup Corp. Holdings, Inc.*, 691 F. Supp. 3d 1157 (N.D. Cal. 2023) .......... 12

*Lee v. Citigroup Corp. Holdings, Inc.*, 2023 WL 6132959 (N.D. Cal. Aug. 29, 2023) .......... 13

*Leek v. Cooper*,
194 Cal. App. 4th 399 (2011) .......... 22

*Martin v. Yasuda*,
829 F.3d 1118 (9th Cir. 2016) .......... 15, 16

*Mossimo Holdings LLC v. Haralambus*,
2015 WL 476298 (C.D. Cal. Feb. 3, 2015) .......... 21

*Musharbash v. JPMorgan Chase*,
2024 WL 919186 (E.D. Cal. Mar. 1, 2024) .......... 11, 12

*Nygeres v. Pac. Sunwear of Cal., LLC*,
2022 WL 20717551 (C.D. Cal. July 6, 2022) .......... 13

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010) .......... 14, 15

*Riot Games, Inc. v. Suga PTE, Ltd.*,
638 F. Supp. 3d 1102 (C.D. Cal. 2022) .......... 26

*Sink v. Aden Enters., Inc.*,
352 F.3d 1197 (9th Cir. 2003) .......... 10

*Stark v. Patreon, Inc.*,
635 F. Supp. 3d 841 (N.D. Cal. 2022) .......... 17

*Steel v. United States*,
813 F.2d 1545 (9th Cir. 1987) .......... 23

*Suarez v. Superior Court*,
99 Cal. App. 5th 32 (2024) .......... 12

*Tawam v. Feld Ent. Inc.*,
2023 WL 5599007 (S.D. Cal. July 28, 2023) .......... 20

*Waldrup v. Countrywide Fin. Corp.*,
2015 WL 93363 (C.D. Cal. Jan. 5, 2015) .......... 25

*Waterfall Homeowners Ass'n v. Viega, Inc.*,
283 F.R.D. 571 (D. Nev. 2012) .......... 22

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.*,
472 F. Supp. 3d 649 (N.D. Cal. 2020)....................23

*Williams v. West Coast Hospitals, Inc.*,
86 Cal. App. 5th 1054 (2022)....................10

*Yershov v. Gannett Satellite Info. Network, Inc.*,
820 F.3d 482 (1st Cir. 2016)....................20

*Yost v. Nationstar Mortg.*, LLC,
2013 WL 4828590 (E.D. Cal. Sept. 9, 2013)....................25

STATUTES

18 U.S.C. § 2710....................*passim*
Cal. Code Civ. Proc. § 1281....................*passim*

RULES

Cal. Rules of Court, rule 8.1115(e)(1) & (3)....................13
Fed. R. Civ. P. 4(k)(2)....................20, 21, 23
Fed. R. Civ. P. 12....................1

OTHER AUTHORITIES

Fed. Prac. & Proc. Civ. § 1067.5....................24

# I.

# PRELIMINARY STATEMENT

Defendants have waived arbitration. The Complaint states a claim. The contesting Defendants are subject to this Court's jurisdiction.[1]

# II.

# STATEMENT OF FACTS

## A. Aylo Improperly Discloses Users' Video History to Google.

Aylo operates the "Pornhub" website. ¶1. Each of the nine named Defendants is engaged in and operates a single, common enterprise utilizing Pornhub as a channel to directly target U.S. and California consumers. ¶18. Pornhub collects a wide swath of information from its users, and tracks their video viewing information. ¶4. Pornhub uses the information it extracts from its users for targeted advertising. ¶¶22–23. Aylo's targeting strategies utilize the identity and frequency of video tags associated with users' viewing habits. ¶24.

This user data collected by Aylo and disclosed to Google is personally identifiable. Google users are assigned a semi-persistent user ID to track their browsing activity. ¶25. Consequently, when a user is signed into Google and visits Pornhub, Aylo transmits the video title information to Google, which Google associates with the user ID. *Id*. Google is thus able to link the video viewing history to a user ID, which is linked to a Google account, allowing Google to identity that user *by name*. *Id*.

Aylo disclosed Plaintiff's data to Google. ¶7. Aylo's privacy policy incorrectly assures users that data it collects is anonymized before being shared with third parties

---

[1] Citations to "¶__" refer to Plaintiff's Complaint (Dkt. 1), and citations to "MTD" refer to Defendants' opening brief (Dkt. 31-1). Unless otherwise stated, all capitalized terms have the meaning set forth in the Complaint, all emphasis is added, and internal citations and quotation marks are omitted.

like Google. ¶28 ("Because we activated IP anonymization for Google Analytics, Google will anonymize the last octet of a particular IP address . . . ."). But Aylo transmits other data that easily allows Google to identify specific users as the individuals who watched specific videos, the "anonymization" of the last eight numbers of the IP address is ineffective. ¶29. Moreover, since the anonymization is done by Google rather than by Pornhub, by definition Google receives non-anonymized data.

Further, the VPPA requires that Aylo obtain written consent of the user "in a form that is distinct and separate from any form setting forth other legal or financial obligations of the consumer." 18 U.S.C. § 2710(b)(2)(B)(i). Aylo fails this "distinct and separate" requirement. Complaint ¶ 30.

**B. Plaintiff Files an Arbitration Demand, Which Aylo Ignores.**

Pornhub's Terms of Service include an arbitration clause (the "Agreement"), providing that all disputes must arbitrated with the American Arbitration Association ("AAA"). Dkt. 31-2 ("Lisy Decl."), Ex. A, at 24. Accordingly, Plaintiff filed an arbitration demand with the AAA on July 26, 2023. Declaration of Jonathan M. Rotter ("Rotter Decl."), Ex. A. Plaintiff paid the $225.00 filing fee and complied with all other requirements of the Agreement and the AAA's Consumer Arbitration Rules. Rotter Decl., ¶4. On September 6, 2023, the AAA initiated the arbitration and invoiced Aylo the required fees which totaled $675.00. Lisy Decl., Ex. B. The initial letter from the AAA to Aylo emphasized that the invoice was served pursuant to Cal. Code Civ. Proc. section 1281 and that payment "**must be paid by October 6, 2023 or the AAA will close the parties' case. Pursuant to California Code of Civil Procedure section 1281.97, the AAA cannot grant any extensions to the payment deadline.**" Lisy Decl., Ex. B, at 3 (emphasis in original).

On September 26, 2023, the AAA sent Aylo a second letter advising that it would administratively close the case if payment were not received by the October 6, 2023 deadline. Lisy Decl., Ex. C. Aylo again failed to pay the required fees by the

AAA's deadline of October 6, 2023, which was 30 days after Plaintiff initiated the arbitration. Lisy Decl., Ex. D. On October 11, 2023, the AAA sent the Parties a letter confirming that the AAA had not received payment from Aylo and informing them that the case had been administratively closed. Lisy Decl., Ex. D.

## III.

## ARGUMENT

### A. This Court Should Deny Aylo's Motion to Compel Arbitration.

#### 1. Aylo Waived Arbitration.

##### (a) Aylo Received Notice from AAA and Failed to Comply with AAA's Fee Deadline.

Cal. Code Civ. Proc. § 1281.97 provides that when a consumer or employment arbitration agreement "requires, either expressly *or through application of state or federal law or the rules of the arbitration provider*, that the drafting party pay certain fees and costs before the arbitration can proceed," the drafting party's failure to pay such fees and costs within 30 days of their due date means the drafting party is in "material breach" and "default" of the arbitration agreement. When the drafting party has breached the agreement or is in default, the consumer "may elect" one of two remedies. Cal. Code Civ. Proc. § 1281.97(b). Plaintiff chose to "withdraw the claim from arbitration and proceed in a court of appropriate jurisdiction." Cal. Code Civ. Proc. § 1281.97(b)(1).

Without question, Aylo defaulted. AAA wrote to Aylo three different times, clearly providing all of AAA's rules regarding administration of the arbitration and provided the deadline for Aylo to pay its share of the arbitration fees. After Aylo ignored Plaintiff's arbitration demand, and AAA's repeated attempts to persuade Aylo to participate in the arbitration process, Plaintiff had no choice but to file the Complaint in this Court. Aylo cannot now seek to enforce the arbitration process that Aylo already ignored.

Aylo does not dispute that Aylo is now in material breach of the Agreement. It has thus waived any right it had to compel arbitration under § 1281.97. Although its motion discusses section 1281.97 extensively, Aylo elides its failure to timely pay the arbitration fees by AAA's deadline, or within 30 days after it, entirely. Indeed, only four days after the Complaint was filed, Aylo responded to AAA with a vague assertion that the arbitration notices were received "too late to meet set deadlines." *See* Lisy Decl., Ex. E (not providing the date on which Aylo did receive the letters, or otherwise providing any reasoning for the six-month delay).

**(b) § 1281.97 is Strictly Construed and Contains no Exceptions.**

The "Legislature's clear and overriding purpose" in enacting § 1281.97 was to "ensure timely dispute resolution by (1) deterring untimely payment of arbitration fees and (2) providing consumers and employees with a procedural mechanism to secure dispute resolution should the drafting party fail to timely pay arbitration fees." *Williams v. West Coast Hospitals, Inc.*, 86 Cal. App. 5th 1054, 1073 (2022).

Courts have strictly applied section 1281.97, even in cases where the drafting party's delay in rendering payment was inadvertent, brief, did not meaningfully prejudice the non-drafting party, or where the arbitration provider was willing to allow the drafting party greater flexibility in making payment than sections 1281.97 permit. *See Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1199–1200 (9th Cir. 2003) (affirming denial of a motion to compel arbitration where the defendant failed to timely pay arbitration fees despite receiving multiple notices); *see also Gallo v. Wood Ranch USA, Inc.*, 81 Cal. App. 5th 621, 641 (2022) (defendant breached under section 1281.97 where payment made six days after final warning from arbitration provider that it would close the matter); *Espinoza v. Superior Ct.*, 83 Cal. App. 5th 761, 775 (2022) (defendant in material breach despite not having been served with the arbitration demand, concluding that the statute provides "no exceptions"); *Cvejic v. Skyview Capital, LLC*, 92 Cal. App. 5th 1073, 1077–78 (2023) (defendant in material

breach even where it paid the fees 40 days after they came due, and despite the arbitration provider extending the deadline such that the payment was "timely").

Here, Aylo has not even come close to complying with AAA's rules regarding payment of arbitration fees: it made no payment at all. Indeed, if Plaintiff had not filed a court action after waiting in vain for months for Aylo to respond to its arbitration demand, Aylo would probably never have even responded to Plaintiff. This is the precise scenario the Legislature aimed to remedy by passing section 1281.97: to prevent a company like Aylo from using arbitration as a shield while cynically avoiding the few claimants who seek to utilize it. *Agerkop v. Sisyphian LLC*, 2021 WL 1940456, at *5 (C.D. Cal. Apr. 13, 2021) ("in passing Cal. Civ. Proc. Code § 1281.97, '[t]he legislature expressly sought to *avoid* a 'perverse incentive scheme' whereby ambiguity in the law allowed companies to delay adjudication, perhaps even affording them 'an *incentive* to refuse to arbitrate claims . . . in the hope that the frustrated [employees and consumers] would simply abandoned them''") (citation omitted). This Court should not reward Aylo for this dilatory conduct, and instead should follow the multiple courts that have strictly applied sections 1281.97 to hold that Aylo's failure to pay the arbitration fees imposed by AAA within 30 days of their due date (or ever) results in Aylo having materially breached the Agreement.

**(c) Aylo's 1281.97 Preemption Argument is a Nonstarter.**

Aylo argues that 1281.97 cannot apply because it is preempted under the Federal Arbitration Act ("FAA"). MTD at 7–10. Aylo's argument fails for two reasons: Aylo's conduct amounts to waiver even independent of section 1281.97, and section 1281.97 is not preempted by the FAA.

First, this Court need not reach the preemption question because Aylo waived any right to compel arbitration based solely on AAA's termination of the matter. *See Musharbash v. JPMorgan Chase*, 2024 WL 919186 (E.D. Cal. Mar. 1, 2024). In *Musharbash*, the court denied the defendant's motion to compel arbitration, finding that the AAA's termination of the arbitration following the defendant's failure to

timely pay the required fees under *both* § 1281.97 *and* the AAA's rules was proper. *Id*. at *4 (noting that "[c]ourts have consistently held that termination by the AAA allows for the cases to return to district court"). Numerous other federal district courts have likewise ruled that defendants waived the right to compel arbitration by violating the arbitration provider's rules. *See, e.g.*, *Lee v. Citigroup Corp. Holdings, Inc.*, 691 F. Supp. 3d 1157, 1160–1161 (N.D. Cal. 2023) (arbitration waived; court "cannot find . . . any cases finding that the AAA is not permitted to enforce payment schedules it deems appropriate or any basis to set aside a termination by the AAA."); *Eliasieh v. Legally Mine, LLC*, 2020 WL 1929244, at *4 (N.D. Cal. Apr. 21, 2020) ("The bottom line is that AAA terminated the arbitration due to [d]efendant's conduct. Under well-settled caselaw and the AAA's own rules, the termination of the arbitration due to [d]efendant's non-payment of fees means that [p]laintiff can pursue his claims in court.").

Second, the FAA does not preempt § 1281.97. Although section 1281.97 is arbitration specific, it does not "outright prohibit[] arbitration or more subtly discourag[e] arbitration" and is thus not preempted by the FAA. *Gallo*, 81 Cal. App. 5th at 641.[2] Applying sections 1281.97 does not interfere with the goals of the FAA, because doing so honors the parties' intent to arbitrate the dispute, "not let it die on the vine and languish in limbo while the party who demanded arbitration thereafter stalls it by not paying the necessary costs in a timely fashion." *Id*. at 643. Nor does application of section 1281.97 interfere with the FAA's goal of safeguarding an expedited and cost-efficient vehicle for resolution because it is designed to facilitate arbitration and prevent delay of the process. *Id*. Preemption has also been rejected by

---

[2] *Accord Suarez v. Superior Court*, 99 Cal. App. 5th 32, 42–43 (2024); *Hohenshelt v. Superior Court*, 99 Cal. App. 5th 1319, 1325–26 (2024); *Keeton v. Tesla, Inc.*, 103 Cal. App. 5th 26, 37–41 (2024); *Espinoza v. Superior Court*, 83 Cal. App. 5th 761, 771 (2022); *De Leon v. Juanita's Foods*, 85 Cal. App. 5th 740, 754 (2022).

federal district courts because section 1281.97 *promotes*, rather than frustrates, arbitration. *E.g.*, *Agerkop*, 2021 WL 1940456, at *5 (reasoning that the FAA "contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration" and the state statutes do not conflict with the FAA and are instead consistent with its purpose); *Costa v. Melikov*, 2022 WL 18228248, at *3–5 (C.D. Cal. Oct. 21, 2022); *Nygeres v. Pac. Sunwear of Cal., LLC*, 2022 WL 20717551, at *1–3 (C.D. Cal. July 6, 2022).

Aylo's reliance on a pair of outlier decisions is misplaced. MTD at 9 (citing *Belyea v. GreenSky, Inc.*, 637 F. Supp. 3d 745, 756 (N.D. Cal. 2022) and *Hernandez v. Sohnen Enters., Inc.*, 102 Cal. App. 5th 222, 243 (2024)). Even if *Hernandez* were precedential,[3] *Hernandez* failed to consider that section 1281.97 does not invalidate arbitration agreements but is more comparable to a statute of limitations. *Keeton*, 103 Cal. App. 5th at 39 n.5 (noting that almost every Court of Appeal has concluded the FAA does not preempt sections 1281.97). Indeed, section 1281.97 "fill[s] in the gaps left by a broadly worded FAA . . . setting clear deadlines for fee payments necessary to kick off an arbitration." *Nyerges v. Pac. Sunwear of Cal., LLC*, 2022 WL 20717551, at *2 (C.D. Cal. July 6, 2022).

Moreover, in *Belyea*, the defendant had paid the fees *before* the arbitration provider terminated the proceedings. *See Lee v. Citigroup Corp. Holdings, Inc.*, 2023 WL 6132959, at *2-3 (N.D. Cal. Aug. 29, 2023) (denying defendant's motion to compel arbitration due to defendant's failure to pay arbitration fees before AAA terminated the proceeding, where the parties' agreement selected AAA and AAA relied on section 1281.97, and distinguishing *Belyea* on this basis). Similarly, Aylo's Agreement states that arbitration would be conducted "in accordance with the Rules

---

[3] The California Supreme Court has granted review of both *Hohenshelt*, 99 Cal. App. 5th 1319 and *Hernandez*, so the opinions have persuasive, but not precedential, value. *See* Cal. Rules of Court, rule 8.1115(e)(1) & (3).

of the American Arbitration Association." Lisy Decl., Ex. A, at 24. Given AAA's application of section 1281.97 and its multiple clear reminders to Aylo that it enforces deadlines in accordance with the statute (Lisy Decl., Ex. B, at 3), applying the deadlines imposed by section 1281.97 simply enforces the Agreement.

Accordingly, this Court should follow the multiple other courts that have concluded the FAA does not preempt section 1281.97. And regardless of whether the statutes are preempted by the FAA, the AAA's proper termination of the arbitration mandates denial of Aylo's motion to compel arbitration.

**2. This Court Has Jurisdiction to Determine Aylo's Waiver.**

**(a) Aylo Waived Any Right to Enforce Its Delegation Clause.**

Even if questions of breach, default, and waiver had been delegated (which they were not, *see infra*, Section I.B.2), this Court must still decide whether Aylo waived its right to enforce the Agreement's delegation clause. "An agreement to arbitrate a gateway issue[,]" delegation clauses are "simply an additional, antecedent agreement" to arbitrate, and the "FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010). Because the delegation clause is a separate agreement, courts must "focus on the enforceability of that specific provision, not the enforceability of the arbitration agreement as a whole." *Bielski v. Coinbase, Inc.*, 2022 WL 1062049, at *2 (N.D. Cal. Apr. 8, 2022). However, the "delegation provision may be unenforceable for the same reason as the broader arbitration agreement." *Id.* at *6.

Delegation clauses are subject to state law contract defenses such as waiver. *Rent-A-Center*, 561 U.S. at 67–69; *Ahlstrom v. Dhi Mortg. Co., L.P.*, 2020 WL 13413226, at *4 (N.D. Cal. Jan. 16, 2020) ("a party may waive their right to enforce the delegation provision."). Therefore, section 1281.97 applies to the delegation clause the same as any other arbitration provision. *See Rent-A-Center*, 561 U.S. at 67–70 (state law contract defenses are applicable to delegation clauses).

Here, Aylo waived its right to enforce the delegation clause by refusing to pay AAA's fees, or even to respond to AAA's multiple requests for payment until six months had elapsed and Plaintiff had filed the instant suit. That the same dilatory conduct constitutes waiver of both the delegation clause and the larger Agreement is immaterial. *Bielski*, 2022 WL 1062049, at *6 (party may contest enforceability of the delegation clause with the same arguments as the overall arbitration agreement); *Hengle v. Treppa*, 19 F.4th 324, 335 (4th Cir. 2021) (same, citing *Rent-A-Center*).

**(b) The Agreement's Delegation Clause Does Not Clearly or Unmistakably Delegate the Arbitrability of this Dispute to Arbitration.**

Threshold issues of arbitrability, such as scope, validity, and enforceability, are generally "for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). This standard "is a high bar, and in the face of ambiguity, courts should be reluctant to find delegation to the arbitrator." *Armstrong v. Michaels Stores, Inc.*, 2018 WL 6505997, at *8 (N.D. Cal. Dec. 11, 2018).

Aylo's delegation clause is limited to "disputes relating to interpretation, applicability, enforceability, or formation of [the Agreement] including, but not limited to, a claim that all or any part of [the Agreement] is void or voidable." Lisy Decl., Ex. A, at 24. This is not sufficiently explicit to delegate questions of material breach, default, and waiver of the delegation clause to the arbitrator.

The Ninth Circuit rejected a nearly identical argument in *Martin v. Yasuda*, 829 F.3d 1118 (9th Cir. 2016). There, like here, the delegation clause reserved for the arbitrator issues of "scope" and "enforceability." *Id.* at 1124. The defendant's argument that waiver (there by litigation conduct) was within the scope of the delegation clause and therefore had to be arbitrated was rejected; the "scope" and "enforceability" language in the delegation clause was not sufficiently clear and unmistakable "to show an intent that an arbitrator decide the waiver" issue. *Id.* In fact,

even broader language delegating "[a]ny controversy . . . involving the construction or application" of the arbitration agreement would not have been sufficiently clear to delegate the question of waiver. *Id.*; *see also Armstrong*, 2018 WL 6505997, at *8 (delegation clause reading "any claim that all or any part of this Agreement is void or voidable and pertaining to any waiver" not sufficiently clear and unmistakable to delegate questions of waiver).

Accordingly, this Court is the proper forum to decide the issue of Aylo's waiver.

**B. The Complaint Adequately Alleges Violation of the VPPA**

The VPPA makes it unlawful for "[a] video tape service provider [to] knowingly disclose[], to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710 (b)(1). Defendants challenge only that Defendants disclosed "personally identifiable information" and that Plaintiff is a "consumer." Neither argument has merit.

**1. The Complaint Adequately Alleges Disclosure of PII**

Personally identifiable information ("PII") is "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider . . ." 18 U.S.C. § 2710(a)(3). Defendants argue under *Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017), that the data sent to Google is insufficient to constitute PII. MTD at 13. This argument fails.

**(a) Pornhub's Own Privacy Policy Shows that Pornhub Disclosed Copious PII to Google**

Pornhub collects "browser and operating system information, devices used to access the Pornhub website, time zone settings, online identifiers like internet protocol addresses . . . the videos users view and their sexual predilections." ¶¶23–24. And when a user signs into her Google account during a browsing session, she is assigned a semi-persistent user ID used to track the user's browsing activity. ¶25; *see, e.g.*, *Jackson v. Fandom, Inc.*, 2023 WL 4670285, at *4 (N.D. Cal. July 20, 2023) ("The

Facebook User ID is more than a unique, anonymous identifier. It personally identifies a Facebook user. That it is a string of numbers and letters does not alter the conclusion."). Defendants also ignore that the Complaint alleges that "[t]his ability to match specific viewers to their video viewing history is further enhanced by Pornhub's embedding Google analytics in its websites and services, which enable the sharing with Google of additional user information." ¶26.

Pornhub itself states: "We use Google as a service provider to collect and analyze information about how users use the websites." ¶28. That the PII is "anonymized," and therefore is not easily identifiable by someone without Google's data, misses the point. MTD at 14 (citing *Eichenberger*). This case is unlike *Eichenberger*, in which ESPN disclosed a Roku device serial number to Adobe, and thus "create[d] a sizable 'pool' of possible viewers." 876 F. 3d at 985. Here, Pornhub directly transmits Google identifiers to Google: there is no "pool," just direct identification of an individual. Further, Pornhub states that Google "will anonymize the last octet of a particular IP address." ¶28. So it is Google, not Pornhub, that does the anonymization.

Drawing reasonable inferences in Plaintiff's favor, by its own admission, Aylo is transmitting VPPA-violating PII to Google in raw form. *See, e.g.*, *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 850 (N.D. Cal. 2022) (accepting allegations even if defendant's "terms of use and other policies [may not] accurately describe how the business actually functions").

**(b) Even if the Only Information Provided to Google by Pornhub was "Anonymized," it is Identifiable**

In *Eichenberger*, the Ninth Circuit held that PII "means only that information that would readily permit an ordinary person to identify a specific individual's video-watching behavior." 876 F.3d at 985–86 (affirming dismissal where only alleged disclosure to Adobe was device's Roku serial number, which "cannot identify an individual unless it is combined with other data . . . that ESPN never disclosed and

apparently never even possessed"). Here, Google needs no information other than what Pornhub sends. Indeed, the Ninth Circuit was careful to allow for the application of the VPPA in such circumstances, noting that "modern technology may indeed alter—or may have already altered—what qualifies under the statute." *Id*. at 986 ("A Facebook link or an email address may very well readily enable an 'ordinary person' to identify an individual"); *see also Ade v. Viki, Inc.*, 2024 WL 1880153, at *2–3 (N.D. Cal. Mar. 28, 2024) (Facebook IDs constitute PII) (collecting cases). Moreover, by "embedding Google analytics in its websites and services, which enables the sharing with Google of additional user information," and "allow[s] Google to identify [each] user by name," Defendants disclosed PII to Google. ¶¶25–26; *see Ade*, 2024 WL 1880153, at *3 (by installing third party software to improve targeted advertising, *defendant* knowingly disclosed PII).

Defendants' reliance on *Ellis v. Cartoon Network, Inc.*, 2014 WL 5023535 (N.D. Ga. 2014) is misplaced because it alleged only disclosure of device information, Android ID numbers, to Bango, not Google. Here, Pornhub transmits Google identifiers to Google. Unlike in *Ellis*, where connecting the device to an individual's name using the Android ID Bango had to "reverse engineer the consumers' identities using [] information previously collected from other sources," *id.* at *1, no other source of information is necessary here. Any ordinary person working at Google can readily identify users with the information provided by Defendants.

An "ordinary person" is not an automaton or a simpleton. *Cf. KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007) ("A person of ordinary skill is also a person of ordinary creativity, not an automaton."). The Ninth Circuit recognized that a Facebook ID or email address could identify an individual, which requires computer literacy and access. VPPA disclosure is viewed "from the perspective of the disclosing party," *Eichenberger*, 876 F.3d at 985, and here Pornhub knows that it is transmitting Google identifiers along to Google. If such disclosure does not meet the ordinary person standard, then any trivial masking of PII would be immune. An individual's

name could be disclosed in a foreign language, which, while easily translatable, is not spoken by the "ordinary person." At worst, whether Google must engage in "great effort," *id.*, to match the name in its database with the Google ID transmitted by Pornhub is a question of fact not suitable for resolution on a motion to dismiss.

**2. The Complaint Adequately Alleges that Plaintiff and Other Premium Pornhub Users Are "Consumers"**

The VPPA defines "consumer" as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). "Plaintiff and the members of the Class are "consumers" because they are registered users of Defendants' websites." ¶59. Though neither the statute nor the Ninth Circuit has defined "subscriber," Plaintiff, a premium user since 2019, fits the plain meaning of "subscriber." ¶7.

Defendants cite just two cases; both are non-binding and inapposite. *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1257 (11th Cir. 2015) held a free app download insufficient because user had not created an account with the Cartoon Network, did not provide any personal information, make payments to the network, or otherwise make a commitment with the network that would have given him access to exclusive or restricted content. Here, Plaintiff had a premium account with Pornhub, did provide personal information, and did get access to exclusive or restricted content. Defendants' argument about which videos Plaintiff watched, MTD at 17, is irrelevant because Pornhub's own privacy policy specifically recites that premium users "have access to content found on Pornhub Premium." ¶27. Moreover, in exchange for this additional access, Pornhub collects from premium users all the personal information discussed above, which is far in excess of the information collected from unregistered users. *Id.* Plaintiff is thus a "subscriber" in the ordinary meaning of that word.

*Kuzenski v. Uproxx LLC*, 2023 WL 8251590, at *5 (C.D. Cal. Nov. 27, 2023) relied on the fact that the videos were "not alleged to be exclusive to subscribers and

can be accessed by anyone visiting Defendant's website." Here, again, registered users do get access to videos not available to non-registered users. Plaintiff has been a premium subscriber since 2019, giving her access to the additional material for years in exchange for allowing Pornhub to gather additional information about her. *Cf. Tawam v. Feld Ent. Inc.*, 2023 WL 5599007, at *5 (S.D. Cal. July 28, 2023) (watching two videos on a website insufficient); *see also Yershov v. Gannett Satellite Info. Network, Inc.,* 820 F.3d 482, 489 (1st Cir. 2016)(even though user did not pay money, his "access was not free of a commitment to provide consideration in the form of that [personal] information, which was of value to" defendant); *Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1332 (N.D. Ga. 2023) (denying motion to dismiss in similar VPPA claim where plaintiff signed up for PBS.org account, which did not require payment).

Accordingly, the Complaint sufficiently alleges that Plaintiff is a "consumer" for purposes of the VPPA.

**C. The Court has Personal Jurisdiction Over All Defendants**

This Court has personal jurisdiction over all of the at-issue Defendants based on their independent and imputed contacts with the forum state, as agents or part of the common enterprise with the other Defendants, or alternatively under the federal long-arm statute, Fed. R. Civ. P. 4(k)(2). Plaintiff "need only make a prima facie showing of jurisdiction to avoid the defendant's motion to dismiss." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). To do so, Plaintiff needs to allege facts that, if true, would support jurisdiction over the defendant. *Id.* "Any conflicts between the facts contained in the parties' affidavits must be resolved in plaintiff's favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *Cirana Corp. v. Changshu Jisheng Spinning*, 2016 WL 5890061, at *3 (C.D. Cal. Oct. 6, 2016) (cleaned up).

**1. The Court Has Jurisdiction Over The Foreign Entities Under Rule 4(k)(2) And Under The Common Enterprise Doctrine**

Each of the self-titled "Foreign Entities" engages in activities in furtherance of the common enterprise; they thus have sufficient minimum contacts with California so exercising jurisdiction over them comports with fair play and substantial justice.

**(a) Aylo Holdings**

Aylo Holdings is the ultimate parent of the other Defendants. ¶¶9 ("Aylo Freesites is a wholly owned subsidiary of Aylo Holdings"), 10 ("Aylo USA is a subsidiary of Defendant Aylo Global, a subsidiary of Aylo Holdings"), 14 ("Aylo Billing is a subsidiary of Aylo Holdings"). Defendants concede as much. *See* Dkt. 31-8 ("Andreou Decl.") ¶5. Because these subsidiaries are part of a "single business enterprise" or "common enterprise" to own, operate, manage, and market the pornographic websites at issue, their contacts may be imputed to Aylo Holdings to confer jurisdiction. *Mossimo Holdings LLC v. Haralambus*, 2015 WL 476298, at *3 (C.D. Cal. Feb. 3, 2015) ("[U]nder the single enterprise version of alter ego liability, it is the case that there is really only one corporation[,] . . . [thus] it should respond, as a whole, for the debts of certain component[s] [] of it.") (emphasis omitted).

The common enterprise theory applies when "corporations integrate their resources and operations to achieve a common business purpose." *J.H. Rose Logistics LLC v. Bonerts Inc.*, 2017 WL 5634098, at *4 (C.D. Cal. Nov. 20, 2017). Under a common enterprise theory, a plaintiff's prima facie case must show "(1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *City and Cty. of S.F. v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 635 (N.D. Cal. 2020) (cleaned up); *see also In re Hydroxycut Mktg. and Sales Practices Litig.*, 810 F. Supp. 2d 1100, 1123 (S.D. Cal. 2011) (even where court was not persuaded that entities disregarded corporate formalities, mingled records, or commingled funds, parent exercised such dominion and control that subsidiary "could

fairly be deemed a mere conduit for [parent's] sales operations" sufficient to confer jurisdiction).

Defendants mistakenly claim that Plaintiff's allegations fail for not alleging "an alter-ego or agency theory." MTD at 20. Plaintiff need not specifically plead "alter ego." *Leek v. Cooper*, 194 Cal. App. 4th 399, 415 (2011) ("[t]o recover on an alter ego theory, a plaintiff ***need not use the words 'alter ego,' but must allege sufficient facts*** to show a unity of interest and ownership, and an unjust result if the corporation is treated as the sole actor."). Plaintiff need only present factual allegations that, if true, show it is ***plausible*** that the challenging Defendants are part of a common enterprise with Defendants with sufficient jurisdictional contacts. *Geanacopulos v. Narconon Fresh Start*, 39 F. Supp. 3d 1127, 1133–35 (D. Nev. 2014) (denied dismissal despite "largely conclusory" alter ego allegations because it was at least "plausible" that plaintiffs could prove alter egos exist through discovery).

Plaintiff has done so. Defendants do not contest the jurisdictional contacts or their relationship with foreign entities Aylo Freesites, 9219-1568 Quebec, and Aylo CY. Defendants do not challenge the facts showing that these entities operated as a common enterprise to own, operate, manage, and market Pornhub. Indeed, "the maintenance of corporate formalities does not overshadow the fact that [Defendants] engaged in a common enterprise." *Waterfall Homeowners Ass'n v. Viega, Inc.*, 283 F.R.D. 571, 583 (D. Nev. 2012) (foreign parent and domestic subsidiary had a common business purpose for yellow brass plumbing fittings used in plaintiffs' homes). These sufficient jurisdictional contacts of these related entities must be imputed to Aylo Holdings and the other entities who challenge jurisdiction.

**(b) Aylo Billing**

Aylo Billing collects subscriptions from premium users (such as Plaintiff) and is also the parent company of Aylo US Billing, which operates the payment processing platform for Pornhub. Compl. at ¶¶14–15. These activities are directly related to the challenged VPPA violations: Aylo Billing collects the subscriptions

from those premium users that enable the common enterprise to collect users' video viewing habits and to improperly disclose them to Google. Therefore, the Court has specific jurisdiction over Aylo Billing. *See WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649, 661 (N.D. Cal. 2020) (specific jurisdiction existed where "defendants" program sought out specific servers—including servers in California—in order to transmit malicious code through those servers).

Aylo US Billing and its parent, Aylo Billing, knowingly target U.S. and California Pornhub users to collect and resell premium subscription services on Pornhub. ¶¶7, 14. Because they are engaged in collecting money from U.S. consumers, both Aylo Billing and Aylo US Billing should expect to be haled into court here.

* * *

The foregoing demonstrates that jurisdiction is properly exercised over Aylo Holdings and Aylo Billing. Moreover, jurisdiction is also proper because (1) Plaintiff's claim arises under federal law; (2) Aylo Holdings and Aylo Billing are each foreign entities not subject to the general personal jurisdiction of any single state; and (3) the exercise of personal jurisdiction comports with due process based on their imputed contacts with the forum, as part of a common enterprise of related companies operating Pornhub. *See* Fed. R. Civ. P. 4(k)(2).

**2. The Court Has Jurisdiction Over The Delaware Entities.**

The Court has general jurisdiction over Defendants Aylo USA, Aylo Global, TrafficJunky, and Aylo US Billing (collectively, the "Delaware Entities").

**(a) General Jurisdiction Exists.**

"[C]ourts must examine the defendant's contacts with the forum at the time of the events underlying the dispute when determining whether they have [general] jurisdiction." *Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987). When assessing contacts with the forum, in determining "how far back from either the accrual or filing of the claim they will look; most courts use a 'reasonable time'

standard yielding timeframes of roughly three to seven years." 4 Fed. Prac. & Proc. Civ. § 1067.5 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) (examining contacts with the forum over a seven-year period)).

Though Defendants claim that the Delaware Entities have resided in Austin, Texas since 2023, Andreous Decl., ¶¶7, 10, 13, 18, they do not dispute that these entities resided in California from at least 2019 (when Plaintiff became a premium user) to 2023. Thus, there is general jurisdiction over the Delaware Entities. *See, e.g.*, *Delphix Corp. v. Embarcadero Techs., Inc.*, 749 F. App'x. 502, 506 (9th Cir. 2018) (finding general jurisdiction over defendant that transferred its headquarters from California to Texas during the period of the alleged misconduct). General jurisdiction exists here.

**(b) The Delaware Entities Are Part of the Common Enterprise.**

Though the Court has general jurisdiction over the Delaware Entities based on their continuous and systematic contacts with California, Court also has specific jurisdiction. A unity of interest and ownership exists between the Delaware Entities and the other named Defendants. Courts look to agency principles to determine whether the parent exercises such dominion and control over the subsidiary that there is a unity of interest and ownership. *E.g.*, *Hydroxycut*, 810 F. Supp. 2d at 1115, 1123. Here, California users would not have used Pornhub ***but for*** each Defendants' role in this common enterprise. ¶19; *Hydroxycut*, 810 F. Supp. 2d at 1116 ("[A] subsidiary is deemed to be acting as the agent of the parent if the subsidiary engages in activities that, but for the existence of the subsidiary, the parent would have to undertake itself.") (collecting cases). Aylo US Billing provides subscription services and payment processing for Pornhub. ¶15. Aylo Global, a subsidiary of Aylo Holdings, and Aylo USA, a subsidiary of Aylo Global, support the operations of Pornhub through support services such as content moderation, industry outreach and influencing, including media relations. ¶¶10–11. TrafficJunky (a subsidiary of Aylo Holdings), is the primary web advertising and digital marketing company operated by

Aylo Freesites (subsidiary of Aylo Holdings) that sells ads on Pornhub, and therefore specifically targets and derives substantial revenue from U.S. and California consumers. ¶¶9, 13. Each Defendant performs a distinct role in this single enterprise, each acting as an incorporated department of Pornhub business devoted to the same unified business purpose.

"[I]t would be unjust to permit those who control companies to treat them as a single or unitary enterprise and then assert their corporate separateness in order to commit frauds and other misdeeds with impunity." *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1249 (Ct. App. 1991). Plaintiff has adequately alleged each Defendant's participation in this enterprise and its wrongdoing. ¶¶7–16, 19. This is sufficient for alleging an unjust result. "[A]t this early stage of litigation Plaintiffs need not prove that [Delaware Entities] was in fact []alter ego[s]; instead, [Plaintiffs] only need to plausibly allege that an inequitable result will follow if the corporate form is not discarded." *In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1167–68 (S.D. Cal. 2018) (finding parent company was the alter ego of the subsidiary where parent maintained control to illicit profits from guaranteeing subsidiary's criminal fines).

Defendants incorrectly argue that the Complaint relies on group pleading. Mot. at 22, relying on *Yost v. Nationstar Mortg.*, LLC, 2013 WL 4828590, at *3 (E.D. Cal. Sept. 9, 2013). First, the group pleading issue in *Yost* involved two unrelated entities and ten unnamed defendants. *Id*. That is very much unlike the related entities at issue here. Second, Plaintiff does not "loop all Defendants in together," but instead describes the role each Defendant plays in the Pornhub enterprise. Regardless, any group pleading is proper under the circumstances, as greater details of the activities and jurisdictional contacts of the Delaware Entities is within Defendants' exclusive possession. *See Waldrup v. Countrywide Fin. Corp.*, 2015 WL 93363, at *8 (C.D. Cal. Jan. 5, 2015) ("[a]bsent discovery . . . plaintiff [could not] point to the specific

fraudulent misrepresentations or omissions allegedly made by the four parent company defendants . . . ”).

Moreover, Defendants’ own case, *Calder v. Jones*, 465 U.S. 783, 790 (1984), supports personal jurisdiction. Where actors are the “primary participants in an alleged wrongdoing intentionally directed at a California resident, []jurisdiction over them is proper on that basis.” *Calder*, 465 U.S. 783, 790 (primary participant-petitioners subject to jurisdiction in California because the alleged intentional wrongdoing that occurred in Florida was calculated to cause injury in California.); *see also Riot Games, Inc. v. Suga PTE, Ltd.*, 638 F. Supp. 3d 1102, 1116 (C.D. Cal. 2022) (combination of the defendant’s activities, “along with the fact that Plaintiff is a well-known videogame developer . . . based in the United States, demonstrate that Defendant knew that harm was likely to be suffered in the United States.”). Defendants do not dispute Pornhub’s well-established contacts with California consumers. Each Defendant is a critical participant in Pornhub’s operations and resulting profits generated California users. Therefore, jurisdiction over each of the Delaware Entities is appropriate here.

That the Delaware Entities’ headquarters and state of incorporation are in two other states is equally unavailing. Even accepting Defendants’ assertion that they have changed their principal place of business to 610 Brazos Street, Suite 500, Austin, Texas 78701 (Andreou Decl., ¶¶7, 10, 13, 18), each has the same office address and the same suite number, which supports a common enterprise theory. *Hydroxycut*, 810 F. Supp. 2d at 1122. Their attempt to maintain corporate separateness is unconvincing—the Delaware Entities are active participants in this common enterprise. ¶¶18–19.

**D. Alternatively, Jurisdictional Discovery Is Appropriate.**

If the Court finds the allegations insufficient, jurisdictional discovery is warranted. Jurisdictional discovery “should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more

satisfactory showing of the facts is necessary." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003); *Harris Rutsky*, 328 F.3d at 1135 (district court abused its discretion in denying motion for jurisdictional discovery where "[t]he record is simply not sufficiently developed to enable us to determine whether the alter ego or agency tests are met"). Each Defendant's detailed involvement in Pornhub's ownership, operation, management, and promotion is exclusively within the knowledge of some or all of the Defendants.

Defendants rely on the Andreou Declaration to submit facts about the contacts that the Foreign Entities and the Delaware Entities do not have with the forum state. The submission of these alternative facts supports jurisdictional discovery because "discovery on the issue might well demonstrate facts sufficient to constitute a basis for jurisdiction[.]" *Harris Rutsky*, 328 F.3d at 1135; *Chan v. Society Expeditions, Inc.*, 39 F. 3d 1398, 1405–06 (9th Cir. 1994) (remanding to district court because insufficient facts developed to determine whether alter ego or agency tests were met for imputing the subsidiary's contacts to the parent).

Moreover, four of these six Defendants have already completed jurisdictional discovery in another case pending in this District. *See generally Fleites v. Mindgeek S.A.R.L., et al.*, 2022 WL 4455558 (C.D. Cal. July 29, 2022). Plaintiff requested materials already produced in *Fleites*, along with other material relevant to this matter, but Defendants refused. *See* Rotter Decl., Exs. B-C. Therefore, at the very least, this Court should grant jurisdictional discovery of the materials requested by Plaintiff.

To evaluate alter ego, courts consider commingling of funds and other assets of the entities, identical equitable ownership of the entities, observation of corporate formalities and the segregation of corporate records, use of the same offices and employees, sole ownership of all of the stock in a corporation, use of one entity as a mere shell or conduit for the affairs of the other, and identical directors and officers. *Hydroxycut*, 810 F. Supp. 2d at 1122. Each of Plaintiff's requests is targeted to elicit information bearing on the financial relationship between these entities, the overlap

in controlling employees, and Defendants' targeted contacts with the Pornhub users in California. *See* Rotter Decl., Ex. B.

## IV.

## CONCLUSION

For the foregoing reasons, Defendants' motion should be denied in its entirety, and in the alternative, Plaintiff requests jurisdictional discovery and leave to amend.

DATED: September 10, 2024

Respectfully submitted,

By: *s/ Jonathan M. Rotter*

GLANCY PRONGAY & MURRAY LLP
Jonathan M. Rotter
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
jrotter@glancylaw.com

CLARKSON LAW FIRM
Glenn A. Danas
Katelyn M. Leeviraphan
22525 Pacific Coast Highway
Malibu, CA 90265
Telephone: (213) 788-4050
gdanas@clarksonlawfirm.com
kleeviraphan@clarksonlawfirm.com

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
David M. Given
Nicholas A. Carlin
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA 94129
Phone: (415) 398-0900
dmg@phillaw.com
nac@phillaw.com

*Attorneys for Plaintiff*

**CERTIFICATION PURSUANT TO L.R. 11-6.2**

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,983 words, which complies with the word limit of L.R. 11-6.1.

*s/ Jonathan M. Rotter*
Jonathan M. Rotter

**PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old. On September 10, 2024, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 10, 2024.

*s/ Jonathan M. Rotter*
Jonathan M. Rotter