Nada I. Shamonki (SBN 205359)
NIShamonki@mintz.com
Nadia Zivkov (SBN 342509)
NAZivkov@mintz.com
**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.**
2049 Century Park East, Suite 300
Los Angeles, CA 90067
Telephone: (310) 586-3200
Facsimile: (310) 586-3202

Attorneys for Defendants Aylo Holdings S.à r.l., Aylo Freesites Ltd, Aylo USA Incorporated, Aylo Global Entertainment Inc., 9219-1568 Quebec Inc., Toqon, LLC, Aylo Billing Limited, Aylo Billing US Corp., and Aylo CY Holdings Ltd (n/k/a Aylo Group Ltd)

[*Additional Counsel on Next Page*]

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JANE DOE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>AYLO HOLDINGS S.A.R.L., a foreign entity; AYLO FREESITES, LTD., a foreign entity d/b/a/ "PORNHUB"; AYLO USA INC., a Delaware corporation; AYLO GLOBAL ENTERTAINMENT INC., a Delaware corporation; 9219-1568 QUEBEC, INC., a foreign entity; Toqon, LLC, a Delaware limited liability company; AYLO BILLING LTD., a foreign entity; AYLO BILLING US CORP., a Delaware corporation; AYLO CY HOLDINGS LTD., a foreign entity,<br><br>Defendants. | Case No. 2:24-cv-03267-MCS-JPR<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2) AND 12(b)(6)**<br><br>Assigned to the Hon. Marc C. Scarsi<br><br><u>Hearing</u><br>Date: November 4, 2024<br>Time: 9:00 a.m.<br>Location: 350 W. First Street<br>Courtroom 7C, 7th Floor<br>Los Angeles, CA 90012<br><br>Complaint filed: April 19, 2024<br>Trial set: not set |

Seth R. Goldman (admitted *Pro Hac Vice*)
SRGoldman@mintz.com
**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.**
919 Third Avenue
New York, NY 10022
Telephone: (212) 935-3000
Facsimile: (212) 983-3115

Christopher A. Lisy (admitted *Pro Hac Vice*)
CALisy@mintz.com
Scott Lashway (admitted *Pro Hac Vice*)
SLashway@mintz.com
Mara O'Malley (admitted *Pro Hac Vice*)
MOMalley@mintz.com
**MINTZ LEVIN COHN FERRIS, GLOVSKY AND POPEO, P.C.**
One Financial Center
Boston, MA 02111
Telephone: (617) 542-6000
Facsimile: (617) 542-2241

Attorneys for Defendants Aylo Holdings S.à r.l., Aylo Freesites Ltd, Aylo USA Incorporated, Aylo Global Entertainment Inc., 9219-1568 Quebec Inc., Toqon, LLC, Aylo Billing Limited, Aylo Billing US Corp., and Aylo CY Holdings Ltd (n/k/a Aylo Group Ltd)

# TABLE OF CONTENTS


Page

ARGUMENT ..... 1

I. PLAINTIFF'S ALLEGATIONS OF BREACH AND WAIVER OF THE ARBITRATION AGREEMENT BELONG IN ARBITRATION. ..... 1

A. Plaintiff's preemption argument cannot be squared with the FAA. ..... 1

B. The parties delegated questions of breach and waiver to the arbitrator. ..... 2

C. Plaintiff challenges not the delegation clause, but the entire arbitration agreement. ..... 3

D. The AAA did not "terminate" the arbitration. ..... 3

II. PLAINTIFF'S THEORY OF VPPA LIABILITY IS UNSUPPORTED BY FACT AND LAW. ..... 4

A. Pornhub does not disclose PII because Google is not an "ordinary person." ..... 4

B. Plaintiff's Complaint does not allege facts that she is a consumer. ..... 5

III. PLAINTIFF'S CONCLUSORY ALLEGATIONS DO NOT MEET HER BURDEN OF DEMONSTRATING PERSONAL JURISDICTION. ..... 6

A. The Delaware Entities' historical headquarters do not support general jurisdiction. ..... 6

B. Plaintiff's alleged links between the Foreign and Delaware Entities and her claim are too remote to support specific jurisdiction. ..... 7

C. Plaintiff's conclusory single-enterprise, alter ego, and agency allegations are not sufficient. ..... 8

D. Plaintiff is not entitled to jurisdictional discovery based on a "hunch." ..... 10

CONCLUSION ..... 11

LOCAL RULE 11-6.2 CERTIFICATION ..... 12

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th Cir. 2020) .......... 6

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) .......... 1

*Baton v. Ledger SAS*, 2021 U.S. Dist. LEXIS 215793 (N.D. Cal. Nov. 8, 2021) .......... 6, 7

*Belyea v. GreenSky, Inc.*, 637 F. Supp. 3d 745 (N.D. Cal. 2022) .......... 2

*Burgos v. Citibank, N.A.*, 2024 U.S. Dist. LEXIS 146779 (N.D. Cal. Aug. 16, 2024) .......... 1

*Burnham v. Superior Ct.*, 495 U.S. 604 (1990) .......... 6

*Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021 (9th Cir. 2022) .......... 2

*Carroll Shelby Licensing v. Halicki*, 2021 U.S. Dist. LEXIS 204216 (C.D. Cal. Apr. 15, 2021) .......... 10

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) .......... 9

*Dekker v. Vivint Solar, Inc.*, 2021 U.S. App. LEXIS 32092 (9th Cir. Oct. 26, 2021) .......... 4

*Delphix Corp. v. Embarcadero Techs.*, 749 F. App'x 502 (9th Cir. 2018) .......... 7

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) .......... 4, 5

*Emamy v. T-Mobile USA, Inc.*, 2024 U.S. Dist. LEXIS 146888 (C.D. Cal. Aug. 16, 2024) .......... 3

*Evitt v. Experian Info. Sols. Inc.*, 2024 U.S. Dist. LEXIS 64048 (W.D. Wash. Apr. 8, 2024) .......... 2

*Heerde v. Learfield Commc'ns*, 2024 U.S. Dist. LEXIS 137781 (C.D. Cal. July 19, 2024) .......... 5

*Howsam v. Dean Witter Reynolds*, 537 U.S. 79 (2002) .......... 2, 3

*Iconlab Inc. v. Valeant Pharms. Int'l Inc.*,
2017 U.S. Dist. LEXIS 222574 (C.D. Cal. Apr. 25, 2017) ..... 8

*Iconlab, Inc. v. Bausch Health Cos.*,
828 F. App'x 363, 364 (9th Cir. 2020) ..... 9

*In re Nickelodeon*,
827 F.3d 262 (3d Cir. 2016) ..... 5

*Jackson v. Airbnb, Inc.*,
639 F. Supp. 3d 994 (C.D. Cal. 2022) ..... 3

*Jeong v. Nexo Fin. LLC*,
2022 U.S. Dist. LEXIS 10089 (N.D. Cal. Jan. 19, 2022) ..... 8

*Kindred Nursing Ctrs. v. Clark*,
581 U.S. 246 (2017) ..... 1

*Krantz v. Bloomberg L.P.*,
2022 U.S. Dist. LEXIS 25492 (C.D. Cal. Jan. 19, 2022) ..... 8

*Kuzenski v. Uproxx LLC*,
2023 U.S. Dist. LEXIS 211822 (C.D. Cal. Nov. 27, 2023) ..... 6

*Lee v. Citigroup Corp. Holdings*,
691 F. Supp. 3d 1157 (N.D. Cal. 2023) ..... 4

*LNS Enters. LLC v. Cont'l Motors, Inc.*,
22 F.4th 852 (9th Cir. 2022) ..... 10

*Marcos v. T-Mobile USA, Inc.*,
2024 U.S. Dist. LEXIS 121400 (C.D. Cal. July 10, 2024) ..... 4

*Mesachi v. Postmates Inc.*,
2021 U.S. Dist. LEXIS 38387 (N.D. Cal. Jan. 8, 2021) ..... 3

*O.T. v. Babybjörn Ab*,
2021 U.S. Dist. LEXIS 204160 (C.D. Cal. Sep. 8, 2021) ..... 8

*Perfect 10, Inc. v. Giganews, Inc.*,
847 F.3d 657 (9th Cir. 2017) ..... 9

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) ..... 8

*Robinson v. Disney Online*,
152 F. Supp. 3d 176 (S.D.N.Y. 2015) ..... 5

*Sabre Int'l Sec. v. Torres Advanced Enter. Sols.*,
60 F. Supp. 3d 21 (D.D.C. 2014) ..... 6

*Schneider v. Cal. Dep't of Corr.*,
151 F.3d 1194 (9th Cir. 1998) ..... 5

*Steel v. United States*,
813 F.2d 1545 (9th Cir. 1987) .......... 7

*Sunderland v. Pharmacare U.S., Inc.*,
2024 U.S. Dist. LEXIS 85360 (S.D. Cal. May 10, 2024) .......... 9

*Tamraz v. Bakotic Pathology Assocs.*,
2022 U.S. Dist. LEXIS 208345 (S.D. Cal. Nov. 16, 2022) .......... 8, 9

*Williams v. Yamaha Motor Co.*,
851 F.3d 1015 (9th Cir. 2017) .......... 9

*Yamashita v. LG Chem, Ltd.*,
62 F.4th 496 (9th Cir. 2023) .......... 7, 8, 10

## ARGUMENT

### I. PLAINTIFF'S ALLEGATIONS OF BREACH AND WAIVER OF THE ARBITRATION AGREEMENT BELONG IN ARBITRATION.

#### A. Plaintiff's preemption argument cannot be squared with the FAA.

Discounting three reasoned decisions as "outliers,"[1] Plaintiff contends that section 1281.97's admittedly "arbitration specific" rule is not preempted by the FAA. Plaintiff's interpretation of section 1281.97, and the cases on which she relies, cannot be squared with Supreme Court precedent.[2]

Plaintiff contends that section 1281.97 passes muster because "it does not 'outright prohibit[] arbitration or more subtly discourag[e] arbitration.'" (Opp'n 6.) But the Supreme Court has never limited the equal-treatment principle only to laws prohibiting arbitration agreements altogether. Rather, the Court has made clear, the FAA "cares not only about" arbitration agreements' "initial validity," but also "the 'enforcement' of arbitration agreements." *Kindred Nursing Ctrs. v. Clark*, 581 U.S. 246, 254 (2017). Thus, "[a] rule selectively finding arbitration contracts invalid because improperly formed fares no better under the Act than a rule selectively refusing to enforce those agreements once properly made." *Id.* at 254-55; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011) (noting the impermissibility of applying defenses like duress or unconscionability "in a fashion that disfavors arbitration").

Nor does section 1281.97 support arbitration as Plaintiff claims. (Opp'n 7.) Section 1281.97 instead "is a stick—failure to pay within 30-days constitutes . . .

---

[1] And yet another Court recently concluded that section 1281.98, the "companion statute" to section 1281.97, is preempted. *Burgos v. Citibank, N.A.*, 2024 U.S. Dist. LEXIS 146779, at *9 (N.D. Cal. Aug. 16, 2024).

[2] Because FAA preemption is an issue of federal law, all cases from California's state courts have just "persuasive, but not precedential, value." (Opp'n 7, n.3.)

waiver of the right to enforce the contract—not a carrot to incentivize arbitration." *Belyea v. GreenSky, Inc.*, 637 F. Supp. 3d 745, 757 (N.D. Cal. 2022). The only incentive "is simply not being hit by the stick—*i.e.*, losing a contractually binding right to arbitrate disputes." *Id.*

**B. The parties delegated questions of breach and waiver to the arbitrator.**

Whether Defendants materially breached the arbitration agreement or waived their right to arbitrate under general common-law principles are questions for the arbitrator, not this Court, to resolve.[3]

To start, the arbitration agreement contains a delegation clause. (Opp'n 9.) Plaintiff ignores the agreement's incorporation of the AAA Rules, which alone "constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1031 (9th Cir. 2022).

Plaintiff next contends that even if the delegation clause delegates some questions of arbitrability, waiver is not within that delegation. (Opp'n 9.) However, Plaintiff's cases address waiver by litigation conduct in court, not waiver by conduct in arbitration—an important distinction. Waiver by litigation conduct is an issue for courts to decide, rather than arbitrators, because it "implicates courts' authority" "to resolve issues arising from *judicial conduct*," which a court is "in the best position to determine." *Evitt v. Experian Info. Sols. Inc.*, 2024 U.S. Dist. LEXIS 64048, at *12 (W.D. Wash. Apr. 8, 2024). On the other hand, compliance with payment deadlines under arbitration rules is the type of "'procedural' question[]" that is "presumptively for the arbitrator, not the judge." *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 84-85 (2002) (compliance with arbitration rule requiring submission of claims within 6

[3] Defendants do "dispute that [they] [are] now in material breach of the Agreement." (Opp'n 4.)

years was a question for the arbitrator); *see Jackson v. Airbnb, Inc.*, 639 F. Supp. 3d 994, 1005 (C.D. Cal. 2022) (distinguishing cases of waiver by litigation conduct where defendant allegedly waived the right to arbitrate by failing to follow arbitration procedures). And, unlike with waiver through litigation conduct, the AAA arbitrators are "comparatively more expert about the meaning of their own rule, [and] are comparatively better able to interpret and to apply it." *Howsam*, 537 U.S. at 85.

**C. Plaintiff challenges not the delegation clause, but the entire arbitration agreement.**

Plaintiff also claims the delegation clause is invalid because Defendants waived it by failing to timely pay the arbitration fees. (Opp'n 8.) Yet Plaintiff's challenge is not that the delegation clause specifically, rather than the arbitration agreement generally, was waived. *See, e.g.*, *Emamy v. T-Mobile USA, Inc.*, 2024 U.S. Dist. LEXIS 146888, at *12-14 (C.D. Cal. Aug. 16, 2024) (the arbitrator, not the Court, should decide whether the party breached under section 1281.97); *Mesachi v. Postmates Inc.*, 2021 U.S. Dist. LEXIS 38387, at *15 (N.D. Cal. Jan. 8, 2021) (same). Plaintiff's only argument is that Defendants waived the delegation clause by not complying with section 1281.97. (Opp'n 8.) But section 1281.97 addresses "material breach of *the arbitration agreement*"—not delegation clauses. Thus, Plaintiff's argument "would invalidate the *entire* agreement to arbitrate, *including* the delegation clause," and is not a challenge that courts may consider. *Mesachi*, 2021 U.S. Dist. LEXIS 38387, at *14.

**D. The AAA did not "terminate" the arbitration.**

Plaintiff contends the Court "need not reach" Defendants' preemption argument because Defendants waived the right to compel arbitration based on the AAA's "termination." (Opp'n 5.) Not so.

*First*, the AAA here did not terminate the arbitration; it administratively closed it. (Lisy Decl., Ex. D, ECF No. 31-6.) While the AAA can suspend an arbitration for

nonpayment, only "the arbitrator has the authority to terminate the proceedings." AAA R-54(c)-(d); *compare, e.g.*, *Lee v. Citigroup Corp. Holdings*, 691 F. Supp. 3d 1157, 1160 (N.D. Cal. 2023) (relying on cases holding "that termination by the AAA allows for the cases to return to district court"). Where no *arbitrator* has found that a party has breached, the parties' delegation of the issue to the arbitrator (as here) remains in force. *See, e.g.*, *Dekker v. Vivint Solar, Inc.*, 2021 U.S. App. LEXIS 32092, at *4 (9th Cir. Oct. 26, 2021) (compelling arbitration to decide whether petitioner breached or waived under section 1281.97 because "no arbitrator found [petitioner] in default of arbitration"); *Marcos v. T-Mobile USA, Inc.*, 2024 U.S. Dist. LEXIS 121400, at *16 n.4 (C.D. Cal. July 10, 2024).

*Second*, the AAA did not determine that Defendants "violat[ed] [its] rules." (Opp'n 6.) The AAA never cited any of its rules for payment deadlines. Instead, the AAA administratively closed the file "pursuant to . . . Section 1281.97," which is preempted. (Lisy Decl., Ex. D, ECF No. 31-6.)

## II. PLAINTIFF'S THEORY OF VPPA LIABILITY IS UNSUPPORTED BY FACT AND LAW.

### A. Pornhub does not disclose PII because Google is not an "ordinary person."

Plaintiff contends that the fact that the information allegedly disclosed to Google "is not easily identifiable by someone without Google's data[] misses the point." (Opp'n 11.) But according the Ninth Circuit, that is the point. *See* *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017). Data is PII under the VPPA only if it "readily permits *an ordinary person* to identify a particular individual as having watched certain videos." *Id.* at 985 (cleaned up). Even if a "resourceful private investigator . . . could, with great effort, figure out" who viewed a video, that still does not create VPPA liability. *Id.* Indeed, *Eichenberger* held that because an

"*ordinary person* could not use" the serial number to identify any individual—even though Adobe could—it was not PII. *Id.*

Here, Plaintiff asserts that "any ordinary person *working at Google*" could identify Plaintiff. (Opp'n 12 (emphasis added).) But someone with access to additional information available only to Google is inherently not an ordinary person. And Plaintiff does not allege that anyone other than Google—no matter their computer savvy, or how hard they try—can use the semi-persistent user ID to identify any person.[4] Plaintiff's theory would gut the ordinary-person standard and open the door to limitless VPPA liability. *See Robinson v. Disney Online*, 152 F. Supp. 3d 176, 181 (S.D.N.Y. 2015) ("If nearly any piece of information can, with enough effort on behalf of the recipient, be combined with other information so as to identify a person, then the scope of PII would be limitless.").

Further, Plaintiff's reliance on cases addressing Facebook IDs is misplaced. (Opp'n 10-11.) Facebook IDs constitute PII because they "can be used, by anyone, to easily identify a Facebook user . . . by simply appending the [FID] to www.facebook.com." *Heerde v. Learfield Commc'ns*, 2024 U.S. Dist. LEXIS 137781, at *8 (C.D. Cal. July 19, 2024). The same is not true for semi-persistent user IDs.

**B. Plaintiff's Complaint does not allege facts that she is a consumer.**

Plaintiff's belated attempt to support her legal conclusion that she is a consumer fails. Plaintiff peppers her opposition with several "facts," unsupported by any allegation in her Complaint. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (allegations in an opposition "are irrelevant for Rule 12(b)(6) purposes"). The Terms of Service state that Pornhub collects certain information from Registered Users if they choose to make payments or to provide that information, (*see*

---

[4] Whether IP addresses are anonymized is irrelevant (*see* Opp'n 11) because full IP addresses are not PII. *In re Nickelodeon*, 827 F.3d 262, 283 (3d Cir. 2016).

Compl. ¶27; Opp'n 13), but Plaintiff does not allege that she did so. Though Pornhub Premium gives users "access to the content found on Pornhub Premium," (Compl. ¶27), Plaintiff alleges disclosure of her Pornhub, not Pornhub Premium, viewing history, (*id.* ¶7). Plaintiff has not alleged that she gave Pornhub anything of value more than unregistered users do. She therefore is not a "subscriber." *See Kuzenski v. Uproxx LLC*, 2023 U.S. Dist. LEXIS 211822, at *9 (C.D. Cal. Nov. 27, 2023) (presence of even multiple relevant factors is not alone sufficient).

## III. PLAINTIFF'S CONCLUSORY ALLEGATIONS DO NOT MEET HER BURDEN OF DEMONSTRATING PERSONAL JURISDICTION.

### A. The Delaware Entities' historical headquarters do not support general jurisdiction.

Because the Delaware Entities were not headquartered in California when the Complaint was filed, they are not subject to general personal jurisdiction here.[5] "Courts have uniformly held that *general* jurisdiction is to be determined no earlier than the time of filing of the complaint." *Baton v. Ledger SAS*, 2021 U.S. Dist. LEXIS 215793, at *10-11 (N.D. Cal. Nov. 8, 2021), *overruled on other grounds*, 2022 U.S. App. LEXIS 33183 (9th Cir. Dec. 1, 2022); *see Sabre Int'l Sec. v. Torres Advanced Enter. Sols.*, 60 F. Supp. 3d 21, 30 (D.D.C. 2014) (collecting cases). Because general jurisdiction derives from a state's power over any individual "found within its borders," *Burnham v. Superior Ct.*, 495 U.S. 604, 610-11 (1990) (plurality op.), the question is whether the Delaware Entities were present in California at the time of the suit, *Baton*, 2021 U.S. Dist. LEXIS 215793, at *12.

Plaintiff's two cases do not support her position. Plaintiff cites *Delphix Corp.*

---

[5] The Court should "accept[] Defendants' assertion[s]" in the Andreou Declaration because Plaintiff did not submit an affidavit disputing them. *See* Opp'n 20; *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020) ("disputed allegations in the complaint that are not supported with evidence or affidavits cannot establish jurisdiction").

*v. Embarcadero Technologies*, 749 F. App'x 502 (9th Cir. 2018), an unpublished, memorandum decision, which drew a dissent. As Judge Rawlinson identified in dissent, no general-jurisdiction precedent supports assessing the defendant's contacts at the time of the underlying conduct. *Id.* at 508 (Rawlinson, J., dissenting). Instead, the majority's only authority, and Plaintiff's only other case, *Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987), assessed specific jurisdiction, not "[general] jurisdiction," as Plaintiff claims. (Opp'n 17.) Where the Delaware Entities had their headquarters before the Complaint was filed is thus irrelevant to the *general*-jurisdiction analysis. *See Baton*, 2021 U.S. Dist. LEXIS 215793, at *12 (no general jurisdiction where defendant moved its offices from California before the complaint was filed and distinguishing *Delphix*).

**B. Plaintiff's alleged links between the Foreign and Delaware Entities and her claim are too remote to support specific jurisdiction.**

Plaintiff's contentions of specific jurisdiction are similarly meritless because Plaintiff does not allege how Defendants' activities give rise to *her* claim or are "close[ly] connect[ed]" to her injury. *See Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 504, 506 (9th Cir. 2023). Consider Plaintiff's claims that the entities:

1. "[C]ollect[] money from U.S. consumers," (Opp'n 17, referencing Aylo Billing and Aylo US Billing);
2. "[S]ell[] ads on Pornhub," (Opp'n 19, referencing Toqon); and
3. Provide limited services for other Aylo website operators, (Andreou Decl. ¶12, referencing Aylo Global).

But Plaintiff does not allege that *she* paid any money; explain the link between selling advertisements and the alleged disclosure of her video-viewing history; or link any of the other services (like Aylo USA's DVD-distribution and e-commerce operations) to the alleged disclosure of her PII. (*See* Andreou Decl. ¶8; Opp'n 18 (relying on disputed allegations).) In short, even if each entity has some contacts with California,

Plaintiff has not shown how they relate to her claim. *Yamashita*, 62 F.4th at 506 (contacts related to other business activities not relevant to jurisdiction).

**C. Plaintiff's conclusory single-enterprise, alter ego, and agency allegations are not sufficient.**

Courts in this circuit have routinely rejected attempts like Plaintiff's to establish personal jurisdiction by casting Defendants as a "single enterprise." *Krantz v. Bloomberg L.P.*, 2022 U.S. Dist. LEXIS 25492, at *15 (C.D. Cal. Jan. 19, 2022).[6] The single-enterprise theory is a basis "for liability, not [a] test[] for personal jurisdiction." *Iconlab Inc. v. Valeant Pharms. Int'l Inc.*, 2017 U.S. Dist. LEXIS 222574, at *19 (C.D. Cal. Apr. 25, 2017). Plaintiff must instead rely on "alter ego and agency theories," *id.*, neither of which applies here.

Plaintiff cannot rely on an alter ego relationship to avoid showing jurisdiction over each defendant individually.[7] *First*, Plaintiff must allege that a parent exercises such "*pervasive control* over the subsidiary" "render[ing] the latter the mere instrumentality of the former." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015). Contrary to Plaintiff's contention, (Opp'n 16), conclusory allegations like Plaintiff's do not meet her burden. *See, e.g.*, *Jeong v. Nexo Fin. LLC*, 2022 U.S. Dist. LEXIS 10089, at *34 (N.D. Cal. Jan. 19, 2022) (rejecting "conclusory allegations" "that Defendants 'collectively operat[e] and maintain[]'" a website in the face of specific denials); *O.T. v. Babybjörn Ab*, 2021 U.S. Dist. LEXIS 204160, at *7 (C.D. Cal. Sep. 8, 2021) (Scarsi, J.) (rejecting "conclusory allegations" that "defendant[s] 'expressly or impliedly agreed to work with and assist each other' with all aspects of

---

[6] Each of Plaintiff's single-enterprise cases addresses liability, not jurisdiction. (Opp'n 15.)

[7] "[T]he test for alter ego and single enterprise is the same," *Tamraz v. Bakotic Pathology Assocs.*, 2022 U.S. Dist. LEXIS 208345, at *6 (S.D. Cal. Nov. 16, 2022), so Plaintiff cannot meet her burden in any event.

creating and selling" a product).[8] Critically here, Defendants dispute Plaintiff's allegation that they operated as a common enterprise to own, operate, and manage Pornhub. (*See* Andreou Decl. ¶¶5, 8, 14, 16.)

*Second*, Plaintiff's alter ego claim fails for a separate, dispositive reason: she cannot show that "'failure to disregard' the separate entities 'would result in fraud or injustice.'" *Iconlab, Inc. v. Bausch Health Cos.*, 828 F. App'x 363, 364 (9th Cir. 2020). The alter ego doctrine "affords protection where some conduct *amounting to bad faith* makes it inequitable for the corporate owner to hide behind the corporate form." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 677 (9th Cir. 2017). The Complaint makes no such allegation. Plaintiff concludes only that she "has adequately alleged each Defendant's participation in this enterprise and its wrongdoing." (Opp'n 19.) That circular reasoning is unsupported by law.

Plaintiff's agency theory fares no better. (Opp'n 18.) *First*, her formulation of the agency theory has been abrogated by the Supreme Court because it "stacks the deck, for it will always yield a pro-jurisdiction answer." *Daimler AG v. Bauman*, 571 U.S. 117, 136 (2014); *see Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017).

*Second*, even if *some* agency theory survives *Daimler*, "under any standard . . . , the parent company must have the right to substantially control its subsidiary's activities," *Williams*, 851 F.3d at 1024-25 (assuming without deciding this theory's vitality). That "requires a showing higher than 'normal oversight of a parent over a subsidiary' and more akin to 'control of day-to-day operations.'" *Sunderland v. Pharmacare U.S., Inc.*, 2024 U.S. Dist. LEXIS 85360, at *12 (S.D. Cal. May 10, 2024). Yet the Complaint here contains *no* allegations that any Defendant controls, let alone "substantially control[s]," any other entity.

---

[8] Plaintiff's sole factual allegation, shared office space (Opp'n 20), does not show an alter ego relationship. *See Tamraz*, 2022 U.S. Dist. LEXIS 208345, at *8.

**D. Plaintiff is not entitled to jurisdictional discovery based on a "hunch."**

Finally, Plaintiff's request for jurisdictional discovery—to which she claims she is entitled given Defendants' evidence disputing her allegations (Opp'n 21)—ignores well-settled caselaw. Defendants' specific denials shift the burden to Plaintiff to show that jurisdictional discovery would be more than a "fishing expedition." *Yamashita*, 62 F.4th at 508. Plaintiff cannot meet that burden by resting on "bare allegations in the face of specific denials," *LNS Enters. v. Cont'l Motors, Inc.*, 22 F.4th 852, 865 (9th Cir. 2022), or "based on little more than a hunch that it might yield jurisdictionally relevant facts," *e.g.*, *Carroll Shelby Licensing v. Halicki*, 2021 U.S. Dist. LEXIS 204216, at *13-14 (C.D. Cal. Apr. 15, 2021) (Scarsi, J.).

Here, Plaintiff has not submitted any evidence contradicting the Delaware and Foreign Entities' specific denials of their contacts with California, and Plaintiff's conclusory allegations of their control over Pornhub.com. Plaintiff's reliance on "bare allegations in the face of specific denials" does not merit jurisdictional discovery. *See LNS Enters.*, 22 F.4th at 865.[9]

///

///

///

///

///

///

///

[9] As set forth in Defendants' response to Plaintiff's request for jurisdictional discovery, (Rotter Decl., Ex. C, at 2-3, ECF No. 32-4), Plaintiff's request for the jurisdictional discovery in an unrelated matter would yield irrelevant information, and her requests here are overly burdensome.

## CONCLUSION

Defendants' motion should be granted, and Plaintiff's request for jurisdictional discovery and leave to amend should be denied.

DATED: September 24, 2024

Respectfully submitted,

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY, AND POPEO, P.C.

*By: /s/ Christopher A. Lisy*
Christopher A. Lisy (admitted *Pro Hac Vice*)
Seth R. Goldman (admitted *Pro Hac Vice*)
Scott Lashway (admitted *Pro Hac Vice*)
Mara O'Malley (admitted *Pro Hac Vice*)
Nada I. Shamonki
Nadia A. Zivkov

*Attorneys for Defendants Aylo Holdings S.à r.l., Aylo Freesites Ltd, Aylo USA Incorporated, Aylo Global Entertainment Inc., 9219-1568 Quebec Inc., Toqon, LLC, Aylo Billing Limited, Aylo Billing US Corp., and Aylo CY Holdings Ltd (n/k/a Aylo Group Ltd)*

**LOCAL RULE 11-6.2 CERTIFICATION**

The undersigned, counsel of record for Defendants Aylo Holdings S.à r.l., Aylo Freesites Ltd, Aylo USA Incorporated, Aylo Global Entertainment Inc., 9219-1568 Quebec Inc., Toqon, LLC, Aylo Billing Limited, Aylo Billing US Corp., and Aylo CY Holdings Ltd (n/k/a Aylo Group Ltd), certifies that this brief contains 3,000 words, which complies with the word limit of L.R. 11-6.1 and Section 9(d) of the Court's Standing Order (ECF No. 10).

Date: September 24, 2024

*/s/ Christopher A. Lisy*
Christopher A. Lisy